608 A.2d 1095

**COMMONWEALTH of Pennsylvania**

**v.**

**Eric EPPS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 21, 1992.

Filed June 18, 1992.

**232**

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, BECK and KELLY, JJ.

KELLY, Judge.

In this appeal we are called upon to determine the constitutionality of a police officer's decision to stop a car solely because of a broken vent window. We find such a decision constitutionally permissible and affirm.

■ The relevant facts and procedural history giving rise to this appeal are extraordinarily easy to summarize.[1] Appellant and an accomplice smashed the rear vent window of

---

1. We note that when reviewing the evidence in this appeal, we must limit our inquiry to a determination of whether the findings of the suppression court are supported in the record. *See Commonwealth v. Blassingale,* 398 Pa.Super. 379, 581 A.2d 183 (1990); *Commonwealth v. White,* 358 Pa.Super. 120, 516 A.2d 1211 (1986). In making this determination we are constrained to consider only the evidence presented by the Commonwealth and such evidence of appellant which is uncontradicted. *See id.*

a car which they then "hot wired" and stole. Shortly thereafter, the two were stopped in the vehicle by a police officer who had noticed the broken window of the car as appellant and his co-conspirator drove it past him. Appellant was arrested and charged with receiving stolen property, theft by unlawful taking, unauthorized use of an automobile, and criminal conspiracy. A motion to suppress was filed and denied. Appellant was convicted of all counts. Post trial motions were filed and denied. This timely appeal followed.

On appeal, appellant does not challenge the fairness of his trial. Nor does he suggest that the police were without probable cause to arrest him. Rather, appellant rests the success of his appeal exclusively on his contention that the police were without justification to pull him over. He argues that evidence of a broken vent window was not sufficiently indicative of his crime, and thus, police were without cause to stop him. Unfortunately for appellant, we do not agree.

■ At the outset, we note that although the factual context from which this appeal stems is novel, the applicable law is not. It is well settled that to justify their decision to stop and briefly detain appellant, the police need not establish their suspicions to a level of certainty, a preponderance, or even a fair probability. The suspect's expectation of privacy is not sufficiently infringed by the minimal intrusion attendant to an investigatory stop as to require any more than a reasonable suspicion that criminal activity was afoot. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Though not tantamount to a "hunch," the requisite quantum of suspicion necessary to conduct an investigatory stop is a level "obviously less demanding than for probable cause." *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 308 (1990) (*quoting United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989)).

In reviewing whether reasonable suspicion (or probable cause) exists, we must, of course, examine the totality of

the circumstances to determine whether there exists a particularized and objective basis for suspecting an individual stopped of criminal activity. *Florida v. Bostick,* 501 U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Commonwealth v. Patterson,* 405 Pa.Super. 17, 591 A.2d 1075 (1991). By this, the United States Supreme Court has clarified, it is meant that,

> First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and *consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.*
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, *the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.*
>
> The second element contained in the idea that an assessment of the whole picture *may yield a particularized suspicion* is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.

*United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981) (emphasis added, citations omitted).

■ Here, the officer who stopped appellant was not acting on merely a "hunch." Instead, he testified that he stopped the stolen car appellant was driving because he had

noticed the broken vent window and knew from his experience in investigating automobile theft that entry to such stolen automobiles is routinely gained by breaking into one of the vent windows, rather than one of the larger, more conspicuous windows of the car. This was an articulable, particularized suspicion, based on objective physical evidence and a trained officer's reasonable inferences therefrom, that a specific crime, *i.e.* auto theft, was being committed by a specific person, *i.e.* appellant.[2] *See United States v. Cortez, supra.*

Moreover, it is incumbent upon us to recognize and account for the fluid nature of events as they were perceived by the officers at the time. *See United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605, 615–16 (1985) (a court assessing the validity of a *Terry* stop should consider whether the officers were acting in a quickly developing situation); *Commonwealth v. White,* 358 Pa.Super. 120, 128, 516 A.2d 1211, 1215 (1986) (same); *Commonwealth v. Mayo,* 344 Pa.Super. 336, 496 A.2d 824 (1985) (same). We must also consider, therefore, the inherent exigencies involved in seizing thieves, where as here, the "get-away" car is both the instrumentality *and the object* of the crime.

We conclude, therefore, that the broken rear vent window, as understood by those versed in the field of law enforcement, constituted sufficient grounds to give rise to reasonable suspicion herein. The exigent circumstances would have forgiven no delay in investigation. It was thus both prudent and constitutionally permissible for the officer

2. That such evidence was only circumstantial, and not direct, is not crucial to this appeal since appellant has not challenged his conviction, but merely the stop. Circumstantial evidence far less particularized than this has previously served as sufficient evidence to constitute reasonable suspicion. *See Commonwealth v. Cortez,* 507 Pa. 529, 532, 491 A.2d 111, 112 (1985), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) (holding that the barking dogs near an individual wandering the streets on a cold, snowy February morning sufficed to show reasonable suspicion). What is important is that a reasonably strong logical nexus between the evidence seen and the crime suspected was established.

in this case to conduct a brief and minimally intrusive investigatory stop for the purpose of dispelling or confirming his reasonable suspicion that the crime of auto theft was in progress. Had the officer approached appellant and the car only to learn of innocuous reasons for the broken window, the appellant may well have been free to leave.[3] Such was not the case. To the contrary, the officer's suspicions were confirmed here when, upon approaching the vehicle, the officer observed unmistakable evidence that appellant had actually stolen the car.[4] For us to hold that the fruit of the officer's prudence must be ignored by agreeing with appellant that an officer must simply allow the driver of a vehicle such as that herein to pass unhindered in the face of such tell-tale evidence of crime, would require this Court to ignore as well as the experience of the officers and the realities of our criminal world. This we cannot do. *See United States v. Cortez, supra.*

We note that appellant's reliance on *Commonwealth v. Edwards*, 355 Pa.Super. 311, 513 A.2d 445 (1986), is misplaced. There, this Court was presented with the question of whether an officer had reasonable suspicion to stop a vehicle which betrayed evidence of "fresh" damage. In rejecting the Commonwealth's argument that the officer reasonably suspected from the damage that the car might

3. It may be argued, as the Commonwealth herein maintains, that the operation of a motor vehicle with a broken vent window is itself a violation of the Motor Vehicle Code. *See* 75 Pa.C.S.A. § 4526 ("it is unlawful ... to operate ... any. vehicle ... unless the vehicle is equipped with safety glass or similar material ... wherever transparent or translucent material is used in the vehicle in doors, *windows,* windshield and wings."). If this were correct, of course, no more would be necessary to stop or further detain a motorist. However, as our disposition regarding reasonable suspicion renders it unnecessary for this Court to consider in this appeal the question of whether operation of a motor vehicle without a vent window is a crime, we express no opinion in this regard.

4. The officer testified that the steering column was broken and had a small, irregularly shaped key dangling from it, consistent with damage done to a vehicle in the process of stealing it. Moreover, appellant was unable to produce any proof of ownership. Indeed, shortly thereafter, the car was reported stolen by the owner who testified at trial as to its theft.

have been in an accident which was unlawfully not reported, the Honorable Judge Brosky cogently reasoned that:

The conclusion that appellant violated the Motor Vehicle Code only follows from the articulated fact of the fresh damage to the car *if* the damage to the car was caused of a type required by the Motor Vehicle Code to be reported and *if* appellant did not report the accident.

While [75 Pa.C.S.] §§ 3744–3746 do require many types of vehicular accidents to be reported to the police, there are certainly a myriad of ways an automobile could sustain even severe body damage which would not require notification of the police. Owners can damage their cars in their driveways or garages or their cars can be struck while parked in lots or on the street. In such cases and, indeed, in any case of an accident which does not involve damage to another's vehicle or property or injury or death, §§ 3744–3746 create no duty to report the accident to the police. Thus, vehicle stops based solely on the presence of fresh damage to the cars would include such a number of presumably innocent persons as to approach the type of subjectively administered, random basis for stopping vehicles and interrogating drivers that is prohibited by the Fourth Amendment.

Even assuming that a reasonably sufficient number of cars with fresh damages will have been in accidents requiring notification of the police, motorists involved in such accidents do not violate the Motor Vehicle Code unless they fail to report such accidents. While it logically follows that a driver has to have been in an accident in order to have not reported it, we hardly believe that the mere occurrence of an accident supports a reasonable suspicion that the driver failed to report the accident. Thus, given *the at best tenuous relationship between the presence of fresh damage to a car and a conclusion that an accident required to be reported has occurred and the near absence of any relationship between such damage and a conclusion that the driver did not report an accident required to be reported,* we hold that the

damage to the car driven by appellant did not reasonably warrant the intrusion of an investigatory stop.

*Commonwealth v. Edwards, supra,* 355 Pa.Superior Ct. at 314–317, 513 A.2d at 447–48 (footnotes omitted, emphasis added).

*Edwards* is inapposite herein; the Commonwealth aptly explains why:

Here, unlike *Edwards,* there is no such attenuation between the officer's observations and the suspected crime. Damage to a point of entry on a vehicle, unlike general body damage, is inherently suspicious. Moreover, the officer testified that, in his experience, car thieves routinely break into cars through the vent window. Indeed, when damage is to a vent window—the smallest and, therefore, least likely window to be accidentally broken— an inference arises that it was purposely and surreptitiously broken. Thus, there is a direct connection between the specific damage observed and the specific crime suspected.

Commonwealth's Brief at 7–8. With this reasoning, we agree, and adopt it as our own.

Accordingly, we hold that where, as here, police observe damage to only the vent window of a passing vehicle, and testify that such peculiar damage is consistent with evidence of auto theft, reasonable suspicion arises to justify the stop of that vehicle. Appellant's sole argument on appeal, therefore, fails.

Judgment of sentence Affirmed.