725 A.2d 737

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William ALLEN, Appellant.**

Supreme Court of Pennsylvania.

Submitted June 10, 1998.

Decided Feb. 26, 1999.

2. Given our disposition of this first issue, it is unnecessary for us to address Appellants' remaining arguments.

524

John W. Packel, Karl L. Morgan, Philadelphia, for W. Allen.

Catherine Marshall, Philadelphia, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

NIGRO, Justice.

This is an appeal from the order of the Superior Court reversing the trial court's suppression of the drugs found on appellant's person during the course of an investigatory stop made pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The issue presented for our review concerns whether the police officer who discovered the drugs on appellant's person during the course of the investigatory stop had a reasonable suspicion that appellant was currently engaged in criminal activity at the time that he conducted the investigatory stop. Because we conclude that the police officer did not have a reasonable suspicion that appellant was currently engaged in criminal activity at the time of the stop, we reverse the Superior Court's order reversing the trial court's suppression of the physical evidence.

■ Initially, we note that we are bound by the factual findings of the suppression court which are supported by the record, and are limited to determining whether the legal conclusions that the suppression court drew therefrom are correct. *Commonwealth v. Brown*, 551 Pa. 465, 711 A.2d 444, 451 (1998)(citing *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111, (1985), *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985)). With this standard of review in mind, a

recitation of the circumstances underlying the instant appeal are in order.

On October 24, 1994, Philadelphia Police Officer Kyle Bey received information from a retired police lieutenant named Grixbie Stephens that a man nicknamed "Mookie" had been selling drugs out of a house located at 2128 North Natrona Street in North Philadelphia.[1] Upon receiving the information, Officer Bey proceeded to 2128 North Natrona Street with his partner and Stephens, ostensibly to investigate appellant's activities. Upon arriving there, Officer Bey observed appellant sitting, apparently asleep, in a chair in front of the house. Appellant met the general description of "Mookie" given by Stephens. When Officer Bey exited his patrol car to approach appellant, he noticed a large bulge in appellant's front left pocket. Concerned that appellant might be armed, Officer Bey ordered appellant to get up and put his hands against the wall. Appellant complied, and when he did, his sweatshirt pocket flared open, revealing several packets of crack cocaine. Officer Bey handcuffed appellant, searched him, and found several more packets containing crack cocaine in his front left pocket. Appellant was arrested and charged with several drug possession offenses. He moved to suppress the drugs found on his person as the fruit of an illegal stop and/or arrest, prompting the trial court to hold a suppression hearing on March 13, 1995.

At the suppression hearing, Officer Bey was questioned concerning the content of the information provided to him by Stephens prior to appellant's arrest. Officer Bey's testimony regarding the substance of the information given to him by Stephens was as follows:

I had spoken to him [Stephens] at the district, the 22nd, at 17th and Montgomery. And he had related to me that he was working with a senior citizens organization, some adult

1. Although the lower courts cite Grixbie Stevens as the source of Officer Bey's information, and 2128 North Latona Street as the location of the alleged drug dealing, the record reflects that the correct spelling of the lieutenant's name is Grixbie Stephens and that the correct spelling of the location of the alleged drug dealing is 2128 North Natrona Street.

services that he renders. And he had information on the 2100 block of Natrona Street, the exact address of this information being 2128 North Natrona Street. That a woman who had lived there, a senior citizen who he was to be doing work for, handling a service for, was having drugs sold out of her house, not by her, but by others, and that the drugs were also being sold at the street level in front of her property. At that time he also gave me a description of a male and the nickname of a male. This description was of a middle-aged man, heavyset, who went by the name of Mookie.... He gave information to me of this person being known to carry a gun and sell narcotics either from inside of this location or outside.

(N.T., 3/13/95, at 8–9.)

Officer Bey also testified at the suppression hearing that he knew the 2100 block of North Natrona Street to be a high drug traffic area, but he had never personally made any narcotics arrests there. He further stated that upon receiving the information from Stephens, the name "Mookie" clicked in his head, and he believed that he had come into contact with "Mookie" before while on duty. However, he could not remember when, or in what context, that contact took place.

Following the suppression hearing, the trial court concluded that Officer Bey did not have a reasonable suspicion that appellant was currently engaged in criminal activity at the time of the investigatory stop, and therefore suppressed the physical evidence seized from appellant's person. The trial court's decision to suppress the physical evidence was largely based on its finding that the information provided to Officer Bey by Stephens was skeletal at best, and failed to provide any details concerning the dates, times, and frequency of the alleged drug sales. In addition, the trial court noted that Officer Bey failed to personally observe any suspicious conduct on appellant's part that would corroborate the incriminating aspects of the information provided by Stephens.

The Commonwealth took an interlocutory appeal to the Superior Court following the trial court's suppression of the

drugs found on appellant.[2] The Superior Court, with Judge Del Sole dissenting, reversed the trial court's suppression of the drugs. The Superior Court specifically found that the information provided by Stephens did, in fact, create a reasonable suspicion on Officer Bey's part that appellant was engaged in criminal activity at the time of his initial *Terry* stop, that Officer Bey was justified in proceeding to conduct a pat down search for weapons, and that the initial discovery of cocaine inside appellant's sweatshirt provided probable cause to arrest him. This Court granted appellant's petition for allowance of appeal.[3]

The police are permitted to stop and briefly detain citizens whenever they have a reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 1880, 1884, 20 L.Ed.2d 889 (1968); *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 228 (1996); *Commonwealth v. Hicks*, 434 Pa. 153, 160, 253 A.2d 276, 280 (1969). In evaluating whether a stop is justified, courts consider whether or not an informant's tip creates a reasonable suspicion of current criminal activity based on the totality of the circumstances. *Alabama v. White*, 496 U.S. 325, 328–29, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990); *Commonwealth v. Martin*, 705 A.2d 887, 892 (Pa.Super.1997); *Commonwealth v. Wilson*, 440 Pa.Super. 269, 275–76, 655 A.2d 557, 560–61 (1995) (citing *Commonwealth v. Epps*, 415 Pa.Super. 231, 233–34, 608 A.2d 1095, 1096 (1992)). The informant's reliability, veracity, and basis of knowledge are all relevant factors. *Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990) (citing *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317,

**2.** The Commonwealth's interlocutory appeal to the Superior Court was taken pursuant to Pennsylvania Rule of Appellate Procedure 311(d), which permits Commonwealth appeals as of right from lower court decisions that the Commonwealth certifies will either terminate or substantially handicap the prosecution.

**3.** In addition to arguing that Officer Bey lacked reasonable suspicion justifying an investigatory stop, appellant argues that he was arrested without probable cause. Appellant, however, only argued the lack of reasonable suspicion in his petition for allowance of appeal. Thus, that is the only issue before this Court.

2328, 76 L.Ed.2d 527 (1983)). Of course, the information supplied to the police by the informant must contain "specific and articulable facts" that lead the police to reasonably suspect that criminal activity may be afoot. *See Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 228 (1996) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). In addition, if the police reasonably believe that a suspect may be armed and dangerous, then they are permitted to conduct a limited pat-down search of the suspect's outer clothing for weapons to ensure their safety. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *Ybarra v. Illinois*, 444 U.S. 85, 92–93, 100 S.Ct. 338, 342–43, 62 L.Ed.2d 238 (1979).

■ Having reviewed the testimony provided at the suppression hearing, the trial court's Findings of Fact and Conclusions of Law, and the Superior Court's opinion reversing the suppression of the drugs found on appellant, we conclude that at the time of the initial *Terry* stop, Officer Bey did not possess sufficient information to raise a reasonable suspicion that appellant was currently engaged in criminal activity. Officer Bey offered no indication in his testimony at the suppression hearing that Stephens had given him any information concerning when appellant was alleged to have sold drugs at 2128 North Natrona Street, or with what regularity and frequency he was selling drugs there. In addition, Officer Bey's testimony fails to establish whether or not Stephens told him the specific basis of the knowledge concerning the drug activity. The trial court found that Stephens told Bey that he received his information concerning the drug dealing at 2128 North Natrona Street from a senior citizen for whom he provided services. Bey's testimony provides no indication that Stephens told him how the senior citizen who gave him his information knew that "Mookie" had been selling drugs and carrying a gun at 2128 North Natrona Street. Therefore, the trial court correctly concluded that Officer Bey was unaware of the specific basis of knowledge of the senior citizen who gave the information concerning "Mookie" to Stephens.[4] The

4. Contrary to the trial court, the Superior Court stated that a senior citizen living at 2128 North Natrona Street was the source of Stephens'

skeletal information provided to Officer Bey by Stephens, combined with the mere fact that appellant was sitting, apparently asleep, outside of 2128 North Natrona Street upon Bey's arrival, simply fails to support the Superior Court's conclusion that Officer Bey had a reasonable suspicion that appellant was currently engaged in criminal activity at that time.[5]

Importantly, appellant's presence outside 2128 North Natrona Street upon Officer Bey's arrival there corroborated only an innocent detail of the information provided by Stephens. Officer Bey could have corroborated Stephens' information by observing suspicious conduct on the part of appellant, and thereby developed the requisite reasonable suspicion that appellant was dealing drugs to justify a *Terry* stop. *See Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068, 1071 (1997) (plurality opinion) ("Upon receiving unverified information that a certain person is engaged in illegal activity, the police may always observe the suspect and conduct their own investigation. If police surveillance produces a reasonable suspicion of criminal conduct, then the suspect may, of course, be briefly stopped and questioned [pursuant to *Terry v. Ohio*] . . . .").

In sum, Officer Bey received second-hand information that lacked any indication with what frequency appellant was selling drugs, or that appellant was currently engaged in doing so. He then proceeded to observe appellant sitting in a chair, apparently asleep, outside the property where Stephens relayed that he had been dealing drugs. Officer Bey should have obtained more information concerning the senior citizen's

information concerning the alleged drug activity at that address. However, Bey's testimony does not clearly specify who told Stephens about the drug activity. The trial court's finding that the source of Stephen's information was a senior citizen for whom he provided services is supported by the record and we are thus bound by it. In any event, even if the senior citizen lived at 2128 North Natrona Street, Officer Bey was never made aware of the specific basis of his or her knowledge.

5. We do not question Stephens' veracity or reliability, and we are sure that he relayed the information that he received to Officer Bey with only the most laudable intentions. However, we are not of the opinion that the information that Stephens provided to Officer Bey, in and of itself, is sufficient to justify Officer Bey's investigatory stop of appellant.

basis of knowledge, and appellant's alleged drug dealing, before conducting an investigative stop. In the alternative, as was mentioned above, Officer Bey could have attempted to personally observe suspicious conduct on the part of appellant, which would have corroborated the incriminating aspects of Stephens' information. Unfortunately, Officer Bey instead decided to rely on the non-specific and second-hand information provided to him by Stephens as his justification for stopping appellant. As a result, Officer Bey's decision to stop appellant and pat him down for weapons was not prompted by a reasonable suspicion that appellant was currently engaged in criminal activity.[6]

The Fourth Amendment to the United States Constitution, and Article 1, Section 8 of the Pennsylvania State Constitution require that police officers have within their knowledge "specific and articulable facts" raising a reasonable suspicion that criminal activity is afoot before they conduct an investigatory stop of an individual. *See, e.g., Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 228–29 (1996)(discussing federal and state constitutional constraints on police investigatory stops recognized in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969)). We find that, considering the totality of the circumstances, Officer Bey did not have within his knowledge "specific and articulable facts" raising a reasonable suspicion that appellant was currently engaged or about to engage in criminal activity at the time of his investigatory stop. Because the physical evidence seized from appellant's person

**6.** In reaching the opposite conclusion, the Superior Court relied on *In the Interest of S.D.,* 429 Pa.Super. 576, 633 A.2d 172 (1993), where the court found that reasonable suspicion justified an initial investigative stop. In that case, an individual walking the streets in a high crime area during the early hours of the morning saw two men carrying drugs and guns. He immediately informed an officer patrolling nearby of his observations, and the officer proceeded to conduct a *Terry* stop of the suspects. In the instant case, Stephens was not an eyewitness to any criminal activity. His basis of knowledge was a third person, whose basis of knowledge was unknown to Officer Bey. In addition, Stephens did not provide any information to Officer Bey suggesting that appellant was currently engaged in criminal activity. Thus, *In the Interest of S.D.* is inapposite.

was obtained by contravening his rights under the Fourth Amendment to the Federal Constitution and Article 1, Section 8 of the Pennsylvania State Constitution, we reverse the Superior Court's order reversing the trial court's suppression of the physical evidence.

Justice CASTILLE files a dissenting opinion in which Justice NEWMAN and Justice SAYLOR join.

CASTILLE, Justice, dissenting.

I respectfully dissent, as I believe that Officer Bey reasonably suspected that criminal activity was afoot at the time he initiated an investigative stop of appellant. Consequently, I would affirm the Superior Court's determination that the investigative stop comported with the requirements of both the United States and Pennsylvania Constitutions.

In its analysis of what Officer Bey observed upon arrival outside 2128 North Natrona Street, the majority correctly points out that Officer Bey observed "Mookie," the subject of the tip and a person with whom he was familiar, sitting in a chair on the sidewalk with his arms folded across his chest and his eyes closed in front of the same house which was identified in the tip and which was located in an area that the officer knew to be a high drug-trafficking area. However, the majority's recitation of the facts omits one rather crucial fact. Namely, Officer Bey, who had been told by the tipster that "Mookie" would be carrying a gun, observed a "big bulge" in appellant's left front pants pocket. N.T. 3/13/95, at 12–13, 23–24. It was the observation of this bulge which, in combination with the officer's corroboration of all other parts of the tip except for the actual witnessing of a narcotics sale, gave Officer Bey a reasonable suspicion that criminal activity was afoot.[1] Indeed, to hold otherwise is to contravene the persuasive precedent of our sister states as well as the federal courts

---

1. In analyzing the nature of the tip itself, the majority suggests that the tip should be deemed less reliable because the former policeman who passed the tip along to Officer Bey did not reveal the name of the senior citizen who provided the information to him. However, the important point is that the senior citizen did not come forward anonymously, but instead sought out a former police officer in person to convey the

which have unanimously concluded that observation of a hidden bulge pursuant to a tip predicting the presence of an identifiable armed suspect at a certain location gives rise to a reasonable suspicion of criminal activity afoot and, hence, a justifiable *Terry* stop.[2]

At the outset, it is important to set forth the axiom that Fourth Amendment *Terry* stop analysis balances the "need to search or seize against the invasion which the search or seizure entails." *Michigan v. Long,* 463 U.S. 1032, 1046, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). When weighing the need to search or seize, we must of course be mindful that a tip which implicates a risk to public safety by alerting police that the individual described has access to a gun suggests a greater need to search or seize than a tip which does not alert the police to this fact. *Speight v. United States,* 671 A.2d 442, 448 (D.C.1996). Thus, courts have consistently upheld the right of police to conduct a limited interrogation and/or search in situations where tipsters described an armed individual and where the officers subsequently corroborated the description of the individual and observed a bulge in the individual's clothing. *See Ramirez v. State,* 672 S.W.2d 480 (Tex.Crim.App.1984) (cited favorably in *Gutierrez v. State,* 1996 WL 50929 *3, 1996 Tex.App. LEXIS 511, at *10) (pursuant to "man with a gun tip" from unnamed witness, police officer observed a man matching the description of the subject of the tip with a bulge in his pocket; court

information, telling him that she knew her information to be reliable because she *lived* in the house out of which "Mookie" was selling drugs. This willingness of the tipster to be identified, as opposed to providing information through an anonymous phone call, placed the tip in a *more* reliable category under this Court's jurisprudence, notwithstanding the majority's conclusion to the contrary. *See Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 574 (1997) (anonymous tip is less reliable because "a known informant places himself or herself at the risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant does not").

2. Assuming arguendo that the initial *Terry* stop was justified, the subsequent arrest was, of course, supported by probable cause. This is manifest since, during the *Terry* stop, the suspect's large sweatshirt pocket flared open, exposing numerous clear plastic packets of cocaine.

held that reasonable suspicion existed for a temporary detention and limited search for weapons); *People v. Quan*, 182 A.D.2d 506, 507, 582 N.Y.S.2d 190 (1992) (even without any tip, officer's observation of bulge in shape of gun handle, in itself, constituted reasonable suspicion); *Gaskins v. United States*, 262 A.2d 810, 812 n. 2 (D.C.1970) (pursuant to tip from "seemingly reasonable" tipster, if officer "saw a gun bulge, he would be warranted in seizing it"); *United States v. Colon*, 1998 WL 122595 *3, 1998 U.S. Dist. LEXIS 3259, at *9 (bulge in coat cited as central observation validating investigative detention). Additionally, the United States Supreme Court has determined that, in the course of an ordinary traffic stop, an officer's observation of a bulge in the driver's jacket is, in itself, sufficient grounds to conduct a limited search. *See Pennsylvania v. Mimms*, 434 U.S. 106, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) ("The bulge in the jacket permitted the officer to conclude that Mimms was armed. . . .")

Thus, at the moment that Officer Bey ordered appellant to get up and put his hands against the wall, he was justified in doing so by having corroborated appellant's presence in a high drug trafficking area, outside the home in which the tipster lived and from which the tipster claimed that appellant trafficked in drugs, with a big bulge in his pants pocket which appeared to the officer to be consistent with the gun with which the tipster predicted appellant would be armed. Indeed, to allow appellant to go forth without even questioning him in this situation, when appellant appeared to be carrying a concealed firearm, would have amounted to a dereliction of Officer Bey's duties—a dereliction which might have had serious implications for the safety of innocent citizens of the Commonwealth.

I believe that the Court's error today is partly a result of its failure to appreciate the principles that drive the distinction between the "reasonable suspicion" required for a *Terry* stop and the "probable cause" required for an arrest. In a *Terry* stop, the intrusiveness of the police conduct at issue is comparatively negligible. The police are not seeking to strip the subject of his liberty and bring him to trial. An individual may well be annoyed by having to respond to questions or by

submitting to a brief detention—especially if that individual is trying to obfuscate some criminal conduct—but police officers do not intrude on any deeply ingrained notion of liberty simply by asking a question or initiating an extremely brief detention to ensure the safety of the citizenry. That is why the standard of "reasonable suspicion" required for an investigative stop is far less exacting than the standard of "probable cause" for an arrest, which is itself far less exacting than the necessary "proof beyond a reasonable doubt" required to convict. These different standards are driven by the vastly different levels of intrusion that are implicated by investigative stops, arrests, and finally by convictions.

Here, after an admirable collaboration between a concerned senior citizen, an ex-police officer, and a current police officer, and after diligent police work corroborating the significant details of the senior citizen's tip, two hundred and fifty-six packets of crack cocaine were seized from a purveyor of illegal narcotics. In suppressing this evidence, the majority fails to demonstrate why a departure from the sound reasoning of the United States Supreme Court and our sister states is warranted. I respectfully dissent.

Justice NEWMAN and Justice SAYLOR join this dissenting opinion.