**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  J.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  J.A. | No. 1343 MDA 2014 |

Appeal from the Order Entered on July 8, 2014
In the Court of Common Pleas of Berks County
Juvenile Division at No(s): 277-J-2014

BEFORE:  BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED FEBRUARY 25, 2015**

Appellant, J.A., a minor, appeals from the dispositional order entered on July 8, 2014, immediately following the juvenile court's adjudicating him delinquent of three counts of possession of a controlled substance, one count of carrying a firearm without a license, and one count of possession of a firearm by a minor.  Appellant presents multiple arguments that the court erred when it denied his suppression motion.  He also claims that he was adjudicated delinquent for carrying a firearm without a license without sufficient evidence.  After careful review, we affirm.

The juvenile court summarized the facts that led to Appellant's adjudication of delinquency as follows:

> 1. On May 9, 2014, Officer Voorhies of the Reading Police Department, while in uniform, was on routine patrol as a passenger in an unmarked police vehicle.  Officer Voorhies had eight (8) years' experience as a law enforcement officer.  He served five (5) years with the Berks County Sheriff's Office, where he was a member of the U.S. Marshall's Drug Task Force, and subsequently served with the Reading Police Department for three (3) years.

2. At approximately 12:50 a.m., Officer Voorhies and his partner stopped a tan Nissan motor vehicle in the 800 block of Franklin Street, Reading, because the Nissan had malfunctioning rear brake lights. This neighborhood was known for having a high volume of drug transactions.

3. After a third officer arrived on the scene, the police approached the vehicle and observed three (3) persons inside: the driver, [Appellant], who sat in the front passenger seat, and a passenger sitting behind the driver.

4. Officer Voorhies approached [Appellant], shined his flashlight into the car and observed that [Appellant] was wearing a backpack while seat belted and was taking deep breaths, shaking his left leg, and that the artery on the right side of [Appellant]'s neck was visibly pulsing.

5. Based on these observations, Officer Voorhies concluded that [Appellant] was nervous.

6. Officer Voorhies also saw [Appellant] rub the front right pocket of his cargo pants multiple times.

7. Officer Voorhies characterized [Appellant]'s actions as indicating a "hot pocket," one which contains an illegal or dangerous item. The suspect rubs the pocket to check if the item is there.

8. Officer Voorhies observed that [Appellant] became more nervous after the back seat passenger was arrested pursuant to outstanding warrants.

9. After making these observations, Officer Voorhies asked [Appellant] if he had anything on him and [Appellant] said "no."

10. Officer Voorhies asked if [Appellant] minded if the Officer checked him and again [Appellant] responded "no."

11. Finally, Officer Voorhies asked [Appellant] if he could pat him down and [Appellant] said "fine."

12. [Appellant] then stepped out of the car still wearing the backpack and Officer Voorhies patted him down. The Officer felt a bulge in the front right pocket of [Appellant]'s cargo pants. Based on his experience, Officer Voorhies immediately recognized the bulge as packaged narcotics. Officer Voorhies

used his fingertips in conducting the pat down and did not manipulate the bulge he felt in [Appellant]'s pocket.

13. The Officer removed the package from [Appellant]'s pocket and observed that it contained two (2) bundles of heroin.

14. Officer Voorhies seized the heroin and arrested [Appellant], placed him in handcuffs and gave him his **Miranda** warnings.

15. The Officer then conducted a further search of [Appellant] and discovered two (2) bags of marijuana and one (1) [Ziploc] baggie containing crack cocaine and seized these items.

16. Officer Voorhies uncuffed [Appellant], removed the backpack and handcuffed him again.

17. Officer Voorhies questioned [Appellant] about the backpack but [Appellant] did not answer.

18. Officer Voorhies unzipped the backpack and found an unloaded revolver and a tee shirt inside.

19. The Officer seized the firearm.

20. Officer Voorhies did not know [Appellant] was under 18 at the time he arrested him.

Juvenile Court Suppression "Decision and Order," 7/1/14, at 1-4 ¶¶ 1-20 (hereinafter, "JCO").

On May 20, 2014, Appellant filed an omnibus pre-adjudication motion to suppress the seized contraband and his statement(s) to police. The juvenile court held a suppression hearing on June 10, 2014. On July 1, 2014, the court denied the motion. At Appellant's adjudication of delinquency hearing on July 8, 2014, the notes of testimony from the June 10, 2014 hearing were incorporated by stipulation, and no further testimony was heard by the juvenile court. Based upon that record, the court adjudicated Appellant delinquent of three counts of possession of a

controlled substance, 35 Pa.C.S. § 780-113(a)(16); one count of carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1); and one count of possession of a firearm by a minor, 18 Pa.C.S. § 6110.1. The court then immediately entered a dispositional order imposing court costs and fines and committing Appellant to Summit Academy for an indeterminate duration.

Appellant filed a timely notice of appeal from the dispositional order. He also filed a timely Pa.R.A.P. 1925(b) statement at the court's direction. However, the juvenile court has not filed a Rule 1925(a) opinion in this matter.[1]

Appellant now presents the following questions for our review:

1. Whether the [juvenile] court erred in denying Appellant's motion to suppress evidence:

    a. Where the police officers lacked reasonable suspicion to subject Appellant to an investigative detention?

    b. Where the police officer lacked reasonable suspicion to subject Appellant to a **Terry**[2] search?

    c. Where [] Appellant did not give voluntary consent to search and there were no other circumstances to justify a warrantless search?

---

[1] Neither Appellant nor the Commonwealth has requested that we remand for the filing of a Rule 1925(a) opinion. Furthermore, the juvenile court had previously filed a detailed opinion in support of its denying of Appellant's suppression motion on July 1, 2014. Consequently, we conclude that the record before us is sufficient to permit review of Appellant's suppression claims. As we discuss in more detail *infra*, the record also permits review of Appellant's sufficiency-of-the-evidence claim.

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

d. Where the police officer did not satisfy the elements of the plain feel doctrine to justify seizing heroin from Appellant's pocket?

2. Whether the evidence was insufficient to support the guilty verdict of Firearms Not to be Carried Without a License, where the Commonwealth failed to establish beyond a reasonable doubt that the Appellant did not possess a license for the firearm[?]

Appellant's Brief at 4.

We review Appellant's suppression-related claims under the following standard of review:

An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. It is also well settled that the appellate court is not bound by the suppression court's conclusions of law.

*In re V.C.*, 66 A.3d 341, 350-51 (Pa. Super. 2013) (quoting *Commonwealth v. Knox*, 50 A.3d at 746 (Pa. Super. 2012)).

The first suppression-related claim before us is whether the police had reasonable suspicion to temporarily detain Appellant. Appellant does not dispute the legality of the traffic stop that precipitated the subsequent events that involved him. Appellant's Brief at 11. However, Appellant claims that he was subject to an investigative detention, *i.e.*, a **Terry** stop, after the completion of the traffic stop.

A warrantless seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions. **Horton v. California**, 496 U.S. 128, 133 n. 4, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (citing **Katz v. United States**, 389 U.S. 347, 357, 88 S.Ct. 507, 19

- 5 -

L.Ed.2d 576 (1967)). One exception allows police to briefly detain individuals for an investigation, maintain the status quo, and if appropriate, conduct a frisk for weapons when there is reasonable suspicion that criminal activity is afoot. *See Terry*, *supra*.

*Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008).

It is well settled that to justify their decision to stop and briefly detain appellant, the police need not establish their suspicions to a level of certainty, a preponderance, or even a fair probability. The suspect's expectation of privacy is not sufficiently infringed by the minimal intrusion attendant to an investigatory stop as to require any more than a reasonable suspicion that criminal activity was afoot. Though not tantamount to a "hunch," the requisite quantum of suspicion necessary to conduct an investigatory stop is a level "obviously less demanding than for probable cause."

*Commonwealth v. Epps*, 415 Pa. Super. 231, 233, 608 A.2d 1095, 1096 (1992) (citations omitted).

Determining whether a reasonable suspicion exists requires an assessment of the totality of the circumstances. These circumstances are viewed through the eyes of a trained officer, not an ordinary citizen. *Interest of B.C.*, 453 Pa.Super. 294, 301, 683 A.2d 919, 923 (1996). As this court noted in *Epps*, *supra*, some of the factors to be considered include "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions— inferences and deductions that might well elude an untrained person." *Epps*[,] at 234, 608 A.2d at 1096 (emphasis omitted) (quoting *U.S. v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)).

*Commonwealth v. Fink*, 700 A.2d 447, 449 (Pa. Super. 1997)

In this case, the juvenile court concluded that Appellant was subject to an investigative detention supported by reasonable suspicion. The court reasoned as follows:

The juvenile was a passenger in a motor vehicle stopped at night in a neighborhood known for having a high volume of drug transactions. Upon his initial encounter [with] [Appellant], Officer Voorhies observed that he was wearing a backpack while seat[-]belted. He also observed [Appellant] taking deep breaths, shaking his left leg, and that the artery in the right side of [Appellant]'s neck was visibly pulsing, leading him to conclude that [Appellant] was nervous. [Appellant] became more nervous after the other passenger was arrested. These facts gave rise to a reasonable suspicion on Officer Voorhies['] part that criminal activity may be afoot and thus the Officer properly subjected [Appellant] to an investigatory stop.

JCO, at 6 ¶ 6.

The facts cited by the juvenile court, alone, do not constitute reasonable suspicion to conduct a *Terry* stop. The court fails to cite any authority for the proposition that nervous behavior in a high crime area constitutes reasonable suspicion that criminal activity is afoot. Indeed, such evidence appears to amount to little more than a "hunch," which falls just short of the "quantum of suspicion necessary to conduct an investigatory stop." *Fink*, *supra* (quoting *Epps*).

Nevertheless, there were facts of record that supported the juvenile court's conclusion that Officer Voorhies possessed reasonable suspicion to justify a *Terry* stop. Specifically, the juvenile court's findings of fact included Officer Voorhies' observation that, during the traffic stop, Appellant rubbed "the front right pocket of his cargo pants multiple times" and that "Officer Voorhies characterized [Appellant]'s actions as indicating a 'hot pocket,' one which contains an illegal or dangerous item. The suspect rubs the pocket to check if the item is there." JCO, at 2 ¶¶ 6-7. The totality of

these circumstances (Appellant's "hot pocket," his nervousness, and his presence in a high crime area in the middle of the night) collectively established reasonable suspicion of criminal activity. As such, we conclude that the juvenile court did not abuse its discretion in reaching its conclusion that the temporary detention of Appellant was legally justified.

Next, Appellant contends that Officer Voorhies lacked reasonable suspicion to subject Appellant to a *Terry* search. Appellant also argues that he did not give voluntary consent for Officer Voorhies to conduct the pat-down. Both of these issues are resolved by our conclusion that the record adequately supports the juvenile court's determination that Appellant consented to the search.

"*Terry* and its progeny set as the standard for allowing a frisk, the presence of a 'reasonable articulable suspicion' that criminal activity is afoot *and that the suspect may be armed and dangerous*." ***Commonwealth v. Shelly***, 703 A.2d 499, 503 (Pa. Super. 1997) (emphasis added). Thus, although we have already determined that Officer Voorhies possessed a reasonable suspicion that criminal activity was afoot, that suspicion did not justify a *Terry* pat-down unless it was also accompanied by a reasonable suspicion that Appellant was armed. Here, however, the juvenile court did not determine that Officer Voorhies reasonably suspected that Appellant was armed. Instead, the court concluded that Appellant consented to the pat-down.

A search warrant is not required if the search has been with voluntary consent. In order for the consent to be valid, it must be unequivocal, specific, and voluntary. Moreover, the consent must be given free from coercion, duress, or deception. The question of whether consent was voluntarily given depends upon the circumstances and a consideration of: the setting in which the consent was obtained; what was said and done by the parties present; and the age, intelligence, and intellectual background of the person consenting.

*Commonwealth v. Barnette*, 760 A.2d 1166, 1170 (Pa. Super. 2000) (internal citations omitted).

The juvenile court considered the following facts in concluding that Appellant consented to the pat-down:

Here, [Appellant]'s detention was short and took place not at a remote location but at a public intersection in the city of Reading. There is no evidence of police abuse, physical contact, or [the] use of physical restraints. Officer Voorhies did not touch [Appellant] until he conducted the pat-down search, nor did he handcuff [Appellant] until after he discovered the heroin in [Appellant]'s pocket. The officer did not display aggressive behavior or use language or tone that w[as] not commensurate with the circumstances. Here, the interaction between [Appellant] and the Officer was conversational, not loud, and the Officer did not use any threatening or intimidating language when speaking with [Appellant]. Finally, Officer Voorhies asked [Appellant] only a few questions, and the questioning was not repetitive or prolonged. Although the Officer did not advise [Appellant] that he was free to leave or of his right to refuse consent, Officer Voorhies was not legally required to give such information to [Appellant]. Given the totality of the circumstances, this Court concludes that [Appellant]'s consent to being searched was voluntary.

JCO, at 7-8 ¶ 10.

Appellant contends that the Commonwealth failed to meet their burden to demonstrate that his consent was voluntary. We disagree. The juvenile court's analysis is supported by the record, and we agree with the court that

- 9 -

the totality of these circumstances demonstrate that Appellant voluntarily consented to be searched. Moreover, Appellant fails to cite any case law or other authority addressing similar or analogous facts that tends to undermine this conclusion. Accordingly, we conclude that Appellant's second and third suppression-related claims lack merit because Appellant consented to be searched by Officer Voorhies.

Next, Appellant asserts that Officer Voorhies did not satisfy "the elements of the plain feel doctrine" and, therefore, the officer was not justified in seizing the heroin from Appellant's pocket. Appellant's Brief at 16. In this regard, Appellant contends that Officer Voorhies "failed to articulate in detail what it was that led him to conclude that he was feeling packaged narcotics." *Id.* at 17.

This claim is meritless. First, it has already been determined that Appellant voluntarily consented to the search of his person for contraband. That Officer Voorhies conducted his initial search of Appellant in a manner ostensibly consistent with **Terry** does not convince us otherwise. It is true that Officer Voorhies asked Appellant, "You don't mind if I pat you down?" and that Appellant answered, "No, that's fine." N.T., 6/10/14, at 9. However, immediately prior to that, the following interaction occurred, according to Officer Voorhies: "At that point in time, I said: [']Hey, do you have anything on you that you're not supposed to have?['] And he told me, [']no.['] I said: [']Do you mind if I check.['] He said, [']no.[']" **Id.** Thus, it

does not appear that Appellant's consent to be searched was limited to his consent to be patted down for weapons.

Second, even if Officer Voorhies had not obtained consent for a broader search beyond a *Terry* pat-down, his seizure of Appellant's heroin was nevertheless justified under the plain-feel doctrine. "[W]hen conducting a valid *Terry* stop and frisk, [a police officer] may seize items that are not weapons if, when patting down a suspect's outer clothing, the officer feels an object whose contour or mass makes its identity immediately apparent as contraband." *Commonwealth v. Stevenson*, 744 A.2d 1261, 1269 (Pa. 2000) (unnecessary capitalization and footnotes omitted). Here, Officer Voorhies testified that he immediately knew the bulge in Appellant's pocket was contraband and, specifically, that it was packaged heroin. He supported this belief with testimony that, due to his experience in law enforcement, he knew how heroin was typically packaged and that what he felt during the pat-down of Appellant was consistent with that experience. Specifically, Officer Voorhies testified as follows:

> Q.    And when you patted that pocket, the cargo pocket, you said you felt something?
>
> A.    Correct.
>
> Q.    [W]hat was that, again?
>
> A.    Packaged narcotics.
>
> Q.    How do you know that?
>
> A.    Through my training and experience I had the opportunity to deal with narcotics on a regular basis. I have handled them all the way down from a single bag to all the way up to multiple

pounds and in between, so I'm very familiar with how it is packaged.

Q.    [W]hen you felt his pocket, how soon did you know it was-

A.    I knew right away what it was.

Q.    You indicated you manipulated the pocket?

A.    I felt it one time, that was it, and I knew what it was.

Q.    [W]hat did it feel like?

A.    I specifically felt the heroin [and] I knew what it was. There's smaller blocks.  When they package it, they are referred to as bundles.  Each bundle comes with ten bags inside, then rubber banded to secure the bags.

N.T., 6/10/14, at 11-12.

We conclude that Officer Voorhies' testimony sufficiency demonstrated that the "contour or mass" of the object he felt in Appellant's pocket made "its identity immediately apparent as contraband." **Stevenson**, 744 A.2d at 1269. Appellant's claim that Officer Voorhies did not articulate adequately why the object was immediately apparent as contraband is belied by the record.  Accordingly, Appellant's claim lacks merit.[3]

_____

[3] We note that Appellant has waived any claim that Officer Voorhies exceeded the bounds of the plain feel doctrine during the pat-down by squeezing or manipulating the object that turned out to be heroin. **See Commonwealth v. Graham**, 721 A.2d 1075, 1082 (Pa. 1998) ("Once the initial pat-down dispels the officer's suspicion that the suspect is armed, any further poking, prodding, squeezing, or other manipulation of any objects discovered during that pat-down is outside the scope of the search authorized under **Terry**.").  Appellant did not raise such a claim in his Rule 1925(b) statement, nor does he raise the matter in his brief.  "Any issues not raised in a 1925(b) statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998).  Nevertheless, as we discussed above, any such claim would be meritless in this case because
*(Footnote Continued Next Page)*

Finally, Appellant claims that his adjudication of delinquency under 18 Pa.C.S. § 6106 is infirm because the Commonwealth did not present sufficient evidence that he was not licensed to carry a concealed firearm. The Commonwealth effectively concedes that it did not offer specific evidence to establish Appellant's non-licensure. However, the Commonwealth argues that circumstantial evidence existed to justify the court's adjudicating Appellant delinquent of the offense, because 1) it is undisputed that Appellant was a minor at the time of the offense, and 2) statutory law conclusively establishes that a minor is not eligible to obtain a license to carry a firearm. Unfortunately, the juvenile court's failure to file a Rule 1925(a) opinion in this case leaves this Court without an explanation as to how the court concluded that this element was met. Nevertheless, we agree with the Commonwealth that, because it would be impossible for Appellant to have obtained a valid license to carry a concealed firearm due to his minor status, Appellant's sufficiency claim lacks merit.

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then

*(Footnote Continued)* _____

Appellant's consent to be searched was not limited to a *Terry* frisk/pat-down.

the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

To establish a violation of Section 6106, "[t]he Commonwealth must prove each of the factors listed in the definition: (a) that the weapon was a firearm…; (b) that the firearm was unlicensed…; and (c) that where the firearm was concealed on or about the person, it must be outside his home or place of business." *Commonwealth v. Lopez*, 565 A.2d 437, 439 (Pa. 1989). Here, Appellant does not dispute that elements (a) and (c) were proven in this case. Indeed, the testimony of Officer Voorhies was sufficient to demonstrate these elements. However, there is no testimony or other evidence of record that *directly* established that Appellant was unlicensed to carry a concealed firearm.

Licenses to carry concealed firearms in Pennsylvania are governed by 18 Pa.C.S. § 6109. Such licenses are only available to "[a]n individual who is 21 years of age or older…." 18 Pa.C.S. § 6109(b). Consequently, "[a] person under the age of twenty-one years is *absolutely disqualified* from obtaining a license under Section 6109…." *In re R.B.G.*, 932 A.2d 166, 171 (Pa. Super. 2007) (emphasis in original). Moreover, "[t]he juvenile court has jurisdiction over *children* charged with delinquent acts." *In Interest of Ryan*, 419 A.2d 1224, 1225 (Pa. Super. 1980) (emphasis added). The

- 14 -

Juvenile Act defines "[**c**]**hild**" as an individual under the age of 18 years, or an individual under the age of 21 who was adjudicated delinquent, or committed a delinquent act, before reaching the age of 18 years. ***See*** 42 Pa.C.S. § 6302 (definition of "**Child**"). Thus, to be subject to the jurisdiction of the juvenile court, Appellant must have been under the age of 18 at the time he was arrested by Officer Voorhies. Additionally, Appellant's status as a defendant in juvenile court implies, without qualification, that Appellant is *under* the age of 21.

Thus, it is not merely unlikely, or even extremely unlikely, that Appellant possessed a valid license to carry a concealed firearm when he was arrested. It is an *absolute impossibility* that he could have possessed a valid license to carry a concealed firearm at that time. Accordingly, we are constrained to agree with the Commonwealth that there was sufficient evidence of record to establish that Appellant was not licensed to carry a concealed firearm when he was arrested in this case because, by the very nature of Appellant's status as a defendant in juvenile court, he was ineligible to possess a license to carry a concealed firearm under Section 6109.

Order of disposition ***affirmed***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2015