J-S25019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY WHALEY | : | |
| | : | |
| Appellant | : | No. 2068 EDA 2020 |

Appeal from the PCRA Order Entered October 1, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0007736-2014

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 10, 2021**

Anthony Whaley appeals from the judgment of sentence entered following his convictions for violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-101, et al. He argues the trial court erred in denying his motion to suppress. We conclude the court did not err and affirm the judgment of sentence.

Whaley was arrested in April 2014 following the stop of his vehicle due to suspected criminal activity. In January 2015, he filed an omnibus pre-trial motion arguing that evidence obtained as a result of the stop should be suppressed because the police lacked reasonable suspicion or probable cause to initiate the stop, remove Whaley from the vehicle, and arrest him, and

_____

[*] Retired Senior Judge assigned to the Superior Court.

lacked probable cause to search his belongings. The trial court conducted a hearing.

Darby Borough Police Officer Anthony Salvatore testified at the hearing. He had been an officer for 11½ years and was assigned as a task force officer with the Drug Enforcement Agency for one and a half years. N.T., 10/28/2015, at 8. During this time, he observed hundreds of hand-to-hand transactions he suspected to be drug sales. *Id.* at 14. He testified that on April 9, 2014, he received information from a confidential informant ("CI") that a "short, stocky, black male driving a white County Cab was supplying drugs on the 400 block of Main Street." *Id.* at 8. The CI had provided reliable information to Officer Salvatore "numerous" times in the past. *Id.* The CI had also provided information to other officers in the department. *Id.* at 9.

The next day, the CI again contacted Officer Salvatore and advised that the individual described the day before was in the same cab and was currently on the 400 block of Main Street, which is a high drug sales and violent crime area. *Id.* at 10, 13. Officer Salvatore traveled to the 400 block of Main Street in an unmarked vehicle. *Id.* at 11. When he arrived, he observed a white County cab and a short, stocky, black male, who was later identified as Whaley. *Id.* He observed Whaley "meeting with another male, and . . . a transaction where Mr. Whaley handed the male something and the male handed Mr. Whaley something." *Id.* at 12. Officer Salvatore was in the next block down and using binoculars when he observed the transaction but was not able to see the items exchanged. *Id.* at 12-13. From the information

received, his training, and his past surveillances, Officer Salvatore suspected it was a drug transaction. *Id.* at 13.

Officer Salvatore testified that after the transaction, Whaley got back into his cab and drove away. Officer Salvatore followed him and, after a little, activated his lights and sirens. *Id.* at 14. Whaley pulled over. Officer Salvatore advised the department of the stop and approached the cab. *Id.*

Officer Salvatore testified that Whaley appeared nervous and was reaching for the inside of his jacket. *Id.* at 15-16. Officer Salvatore asked if there were any weapons in the car, and Whaley said no. *Id.* at 16. Officer Salvatore testified that "[a]s [Whaley] was reaching for the inside of his jacket, it obviously heightened [Officer Salvatore's] awareness," and he "took [his] weapon out of its holster and . . . told [Whaley] to stop." *Id.* He asked again if there were weapons in the car, and Whaley stated, "I fucking told you there were no weapons in the car." *Id.* Officer Salvatore stated Whaley appeared stiff and nervous and "the whole time his hand was . . . going for his jacket." *Id.* Officer Salvatore testified that he told Whaley to stop and to get out of the car, but Whaley refused. Officer Salvatore believed that Whaley had a weapon on him based on his experience and Whaley's behavior. *Id.* Officer Salvatore opened the car door and, as Whaley did not comply with requests to step out of the car, he pulled Whaley out. *Id.* at 17.

Officer Salvatore testified that he told Whaley to put his hands on top of the car, but Whaley did not comply. *Id.* at 18. Whaley was struggling and he "brought his right arm down, and again, it was like he was reaching towards

- 3 -

his jacket." *Id.* Officer Salvatore was trying to hold Whaley's arms down, and Whaley swung his arms and elbowed Officer Salvatore's neck. *Id.* During the struggle, Officer Paul McGrenera and other officers arrived on the scene. *Id.* They got Whaley to the ground, "but before [they] were able to get him in cuffs, his hand did make it to the inside of his jacket, and . . . as [they] were pulling his arms around, a clear plastic bag fell out onto the ground." *Id.* The bag contained a second plastic bag and four knotted plastic sandwich bags, each containing a large rock of a hard, white, chunky substance. *Id.* at 19. It also contained seven clear small glassine bags containing a hard, white, chunky substance and three additional black glassine bags with a gold skull design containing a hard, white, chunky substance. *Id.* Officer Salvatore testified that he suspected the substance was crack cocaine. *Id.* Officer Salvatore then applied for a search warrant to search the vehicle, where additional narcotics were located. *Id.* at 21.

On cross-examination, Officer Salvatore stated he had no knowledge of Whaley prior to the phone calls from the CI. *Id.* at 24. The CI did not say he had purchased narcotics from Whaley or name the narcotics Whaley was selling. *Id.* at 26. Officer Salvatore testified that no one attempted to stop the pedestrian who touched Whaley's hand. *Id.* at 34. He testified that Whaley did not have any traffic violations, and he was pulled over due to the narcotics investigation. *Id.* at 39, 22. He testified that in a normal traffic stop, he would request identification, license, insurance, and registration. *Id.* at 46. However, "as soon as [the officer] saw [Whaley's] stature and the way he was sitting,

[his] first question was, are there any weapons in the car." *Id.* Officer Salvatore testified that Whaley was "seated stiffly" with "[h]is right hand . . . down to his side," where Officer Salvatore could not see it. *Id.*

Officer Paul McGrenera of the Yeadon Borough Police Department testified that he responded to a radio transmission and provided back-up for Officer Salvatore for the traffic stop of Whaley. *Id.* at 62. When Officer McGrenera arrived, Whaley was being removed from his vehicle and began to resist. *Id.* at 64. Officer McGrenera testified that as Whaley was being taken to the ground, narcotics fell from his person. *Id.* at 65.

Whaley also testified at the suppression hearing. After getting his cab fixed by a mechanic, he went through Main Street and stopped because he saw his friend Bop. N.T., 10/9/2015, at 14; N.T, 10/28/15, at 84. He got out to talk to Bop for a couple of minutes and then returned to his car. *Id.* Whaley testified there were people walking around but he spoke only with Bop. N.T., 10/28/2015, at 84. He did not have hand-to-hand contact with Bop, fist bump him, or shake his  hand. *Id.* He did not sell narcotics while there. *Id.* at 85. He testified he would not have touched Bop's hand at that time because he knew he was carrying narcotics. *Id.* He stated he would not have "[b]ecause of the amount of contraband that I had on me, I wouldn't have shook hands with anyone, I wouldn't have d[one] that, that's giving – that's giving somebody a direct reason to sit there and think that you did anything wrong." N.T., 10/9/2015, at 17. On cross-examination, he further explained that he doesn't shake hands, stating "I just don't, I do that, too, you know, people

don't wash their hands either, so – I got a tendency I like to eat, so --." *Id.* at 21.

He testified that Officer Salvatore asked for his driver's license and registration, which Whaley provided. N.T., 10/28/2015, at 90. He testified his hands were on the steering wheel and he did not have a hand down so that the officer could not see it. *Id.* Whaley stated he asked why he was being pulled over, and Officer Salvatore said he would tell him later. *Id.* at 91. He testified he kept asking why he was being pulled over, and Officer Salvatore wouldn't give him an answer and then asked if he had weapons in the car. *Id.* Whaley responded that he did not. Then Officer Salvatore asked again, and Whaley kept asking why he was being pulled over. Officer Salvatore then said, "[Y]ou want to be a dickhead. Open the door and get out [of] the car." *Id.* at 92. Whaley said, "Get out of the car for what?" *Id.* He only removed his hands from the steering wheel when Officer Salvatore started grabbing him and pulling him from the car. *Id.* He testified his hand was not going in his jacket or reaching for his jacket pocket. *Id.* He stated, "If I'm sitting there reaching – if I'm up there reaching for my pocket and he got a gun in his hand, why would I continue to do that. That don't even – no, I didn't do that, no." *Id.* at 93. Officer Salvatore never told him he was under arrest while he was seated in the vehicle. *Id.* He testified they got into a "scuffle," there were lot of officers there, and they were trying to tase him until someone said there were cameras there. *Id.* at 95-96. He was not trying to reach into his pocket at this point and he stated it would not have been possible. *Id.* at 96. He further

testified that the narcotics did not fall out of the jacket, but rather an officer pulled the zipper down and pulled the narcotics from his jacket. *Id.* Whaley further testified that when he was at the police station after his arrest, Officer Salvatore said that he "had a hunch that [he] was going to be dirty, I thought a couple bags, but . . . didn't realize it was going to be this much." N.T., 10/09/15, at 19.

The trial court denied the motion to suppress. The court did not credit Whaley's testimony, finding he "contradicted himself, changed his explanation and his testimony made no sense." Trial Court Opinion, Nov. 8, 2018, at 9. It found Officer Salvatore initially subjected Whaley to an investigatory detention, which was supported by reasonable suspicion of criminal activity. *Id.* at 6, 21-22. It further found Officer Salvatore had a reasonable belief, based on articulable facts, that his safety was compromised. *Id.* at 20-22.

Following a stipulated non-jury trial, the court found Whaley guilty of five counts each of Possession with Intent to Deliver Controlled Substances ("PWID") and Intent to Possess Controlled Substances by Persons not Registered or Authorized, and one count each of Possession of Marijuana and Possession of Drug Paraphernalia.[1] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(31), and (a)(32). The court sentenced Whaley to 72 to 180 months' incarceration.

_____

[1] The court found him not guilty of resisting arrest and disorderly conduct.

- 7 -

Whaley filed a timely notice of appeal, but his counsel did not file an appellate brief and the appeal was dismissed in March 2019. Whaley's direct appeal rights were reinstated.

Whaley raises the following issue:

> I. Was the Trial Court in error for failing to grant [Whaley's] Pre-Trial Motion in reference to the alleged information provided by a confidential informant as well as the stop of the motor vehicle that he was operating and suppressing any and all evidence obtained as of a result of said illegal stop and search?

Whaley's Br. at 4.

Whaley argues the police subjected him to an investigative detention without reasonable suspicion. He notes the CI has no registration or identifying number and nothing to substantiate his or her credibility. He further maintains the surveillance did not corroborate the information obtained from the CI. He points out that the CI did not inform the police of the controlled substance Whaley was selling and did not allege he or she ever purchased a controlled substance from Whaley.

Whaley additionally claims Officer Salvatore "was acting on a hunch and not as to any specific information from a confidential informant." *Id.* at 25. He claims Officer Salvatore's testimony was not credible and "there was no probable cause to conduct a car stop, a search of his person or to obtain a warrant to search the cab that Mr. Whaley was driving." *Id.* at 26. He stated that Officer Salvatore could not corroborate that he had contact with his CI, he did not stop the alleged buyer of the controlled substance to confirm the

sale, and the details of the car stop were contradicted by another Commonwealth witness. He concludes that "[t]he multiple inconsistencies that cannot be reconciled along with the usual amount of uncorroborated information provided by Officer Salvatore in a narcotics investigation has to be taken into account when deciding whether there was probable cause to arrest Mr. Whaley." *Id.* at 26-27.

Our review of "a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* If "the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous." *Id.* (citing *Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa. 2003)). We are not bound by the suppression court's legal conclusions. Rather, it is our "duty . . . to determine if the suppression court properly applied the law to the facts." *Id.* (quoting *Commonwealth v. Mistler*, 912 A.2d 1265, 1269 (Pa. 2006)).

Interactions between citizens and police officers are classified as either a mere encounter, an investigative detention, or a custodial detention:

> A "mere encounter" can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an "investigative detention," by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa.Super. 2000) (citations and some quotation marks omitted).

Here, Officer Salvatore subjected Whaley to an investigative detention when he conducted the traffic stop, as he used official compulsion to have Whaley stop his vehicle. *Commonwealth v. Cruz*, 21 A.3d 1247, 1250 (Pa.Super. 2011) (noting "the forcible stop of a vehicle constitutes an investigative detention such that there must be reasonable suspicion that illegal activity is occurring"). We must therefore determine whether he had reasonable suspicion to conduct the stop.

"An officer may stop and briefly detain a person for investigatory purposes when that officer has 'reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot.'" *Commonwealth v. Mackey*, 177 A.3d 221, 229 (Pa.Super. 2017) (quoting *Commonwealth v. Allen*, 725 A.2d 737, 740 (Pa. 1999)). The "inquiry is an objective one,

namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* (quoting *Commonwealth v. Gray*, 784 A.2d 137, 142 (Pa.Super. 2001)). We consider "the totality of the circumstances, including such factors as 'tips, the reliability of the informants, time, location, and suspicious activity.'" *Id.* (quoting *Gray*, 784 A.2d at 142).

Here, the trial court credited the testimony of Officer Salvatore and found Whaley not credible. It found Officer Salvatore had reasonable suspicion to stop the vehicle:

> Officer Salvatore possessed sufficient reasonable suspicion under all the circumstances here including the information from the [CI], his training, his experience in directly surveilling hundreds of hand[-]to[-] hand drug transactions and his observation of the hand-to-hand drug transaction at issue here conducted in the open air in an area notorious for high drug activity and violence to conduct the stop of [Whaley].

Trial Court Op. at 21.

The record supports the trial court's credibility and factual findings and its legal conclusions are not erroneous. Officer Salvatore received information from a known informant – who had previously provided reliable information – that a man matching Whaley's description was driving a cab and that he was selling narcotics at a specific spot in a high-crime area. Officer Salvatore went to the area and observed Whaley engage in a hand-to-hand transaction, typical of a drug transaction. Further, Officer Whaley was a seasoned police officer, experienced in conducting surveillance and observing drug

- 11 -

transactions. Considering the totality of the circumstances, Officer Salvatore possessed reasonable suspicion of criminal activity sufficient to justify the investigative detention. *See, e.g., Commonwealth v. Brown*, 996 A.2d 473, 479 (Pa. 2010) (concluding police had reasonable suspicion to support an investigative detention where a known informant provided information regarding imminent criminal activity committed by a specific person at a particular time and place and the police corroborated the facts through investigation).[2]

Although "reasonable suspicion of unlawful activity is sufficient to justify a forcible stop, it does not necessarily justify a frisk for weapons." *Mackey*, 177 A.3d at 227; *see Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa.Super. 2014) (A frisk for weapons "is a type of investigative detention requiring reasonable suspicion that criminal activity is afoot and that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others"). "Only when the officer reasonably believes the suspect may be armed and dangerous is a weapons frisk appropriate." *Mackey*, 177 A.3d at 227.

Here, the trial court found Officer Salvatore reasonable believed Whaley had a weapon and was concerned for his safety:

---

[2] *See also Commonwealth v. Thompson*, 985 A.2d 928, 936 (Pa. 2009) (finding probable cause existed where nine-year veteran of police force, who was familiar with heroin transactions and packaging, observed hand-to-hand transaction in a high crime area that he believed to be a drug sale).

> Under a totality of the circumstances where [Whaley']s hand and arm [were] obscured by [Whaley's] positioning combined with [Whaley's] reaching for his left inside jacket pocket and refusal to cooperate with police, Officer Salvatore had a reasonable belief, based on articulable actions taken by [Whaley], this his safety was compromised.

Trial Ct. Op. at 20.

The trial court factual findings are supported by the record and it did not err in concluding Officer Salvatore had a reasonable concern for his safety. When approaching the car, Officer Salvatore observed Whaley's hand going to the inside pocket of his jacket. Therefore, rather than merely asking for Whaley's license and registration, Officer Salvatore asked Whaley if he had any weapons. N.T., 10/28/15, at 46. Whaley responded that he did not, but continued to reach toward his pocket, even after Officer Salvatore told him not to do so. Based on Officer Salvatore's experience and Whaley's actions, Officer Salvatore reasonably believed his safety was compromised. Further, because Whaley refused to comply with requests to exit the vehicle and to stop putting his hand near his pocket, Officer Salvatore was permitted to remove Whaley[3] from the vehicle to conduct a search for weapons. **See Commonwealth v. Murray**, 936 A.2d 76, 79-80 (Pa.Super. 2007) (finding that where police stopped a car with tinted windows, such that they could not

_____

[3] A police officer may ask the occupants of a car to exit the vehicle during a traffic stop, even without reasonable suspicion of criminal activity. **See, e.g., Commonwealth v. Pratt**, 930 A.2d 561, 564 (Pa.Super. 2007) (reviewing case law and concluding "following a lawful traffic stop, an officer may order both the driver and passengers of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot.").

see the interior of the car but could see a lot of movement, the police were permitted to pull occupant and conduct a search for weapons).

In his brief, Whaley states the police lacked probable cause to arrest him. Yet he also states the stop of the vehicle was an investigative detention and does not allege his arrest occurred before the narcotics fell from his pocket. We have concluded that the initial stop was an investigative detention, as explained above. We also conclude that police effected a full custodial arrest only after the narcotics fell from his pocket and were in plain view. At that point, the police most certainly had probable cause to arrest Whaley. *Commonwealth v. Ellis*, 662 A.2d 1043, 1049 (Pa. 1995) (plain view exception to warrant requirement applies where the officer sees the evidence from a lawful vantage point and it is "immediately apparent . . . that the object observed is incriminating evidence"); *Commonwealth v. Liddle*, 21 A.3d 229, 236 (Pa.Super. 2011) (*en banc*) (officer had probable cause to seize cocaine that was in plain view during traffic stop).

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: 11/10/2021

- 14 -