655 A.2d 557

**COMMONWEALTH of Pennsylvania**

v.

**James WILSON, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1995.

Filed Feb. 24, 1995.

Erica H. Koisling, Asst. Public Defender, Doylestown, for appellant.

T. Gary Gambardella, Asst. Dist. Atty., Doylestown, for Commonwealth, appellee.

Before BECK, KELLY and HOFFMAN, JJ.

KELLY, Judge:

In this opinion, we are called upon to determine whether a suspect's acts of twice alighting from a vehicle in a neighborhood known for a high degree of drug-related activity constitutes sufficient facts to justify a subsequent warrantless investigative stop of the vehicle by police under *Terry v. Ohio.*[1] We hold that the facts as found by the suppression court do not support the conclusion that the police had a reasonable suspicion of criminal activity to warrant the investigative stop. Accordingly, we reverse the judgment of sentence entered by the trial court, and remand for proceedings consistent with this opinion.

This appeal involves a challenge to the suppression court's order denying appellant's motion to suppress evidence seized by police during an investigative stop of the motor vehicle that appellant occupied as a passenger. Accordingly, the facts of this case, as found by the suppression court, are as follows:

THE COURT: We will make the following findings: On or about April 16, 1993, Detective Timothy Carroll, as an officer and detective of Bensalem Township Police Department, Bucks County, Pennsylvania, was engaged in a narcotics and vice investigation and was engaged specifically in a BuxNet operation designed to locate Bucks County residents suspected to be engaged in the purchase of illegal

---

1. *392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).*

drugs and paraphernalia in Philadelphia; that Detective Carroll, as an officer with the aforesaid department since April of 1977, has considerable experience in investigation of drug trafficking and has made numerous arrests and convictions.

That on the occasion of April 16, 1993, he proceeded into an area of known high drug activity, commonly identified as the Badlands, but specifically an area between Cambria and Somerset Streets on the 2800 block of North Hope Street; that during the course of his surveillance in the area in question, he not only observed suspicious behavior relating to suspected drug activity, but did in fact see and hear unnamed parties engaging in hawking of drugs and illegal drug paraphernalia; that on the date in question, Detective Carroll observed a 1982 Chevy Chevette operated by defendant Schrader and with defendant Wilson as a passenger enter into the area previously described; that the area described is a devastated, dilapidated neighborhood in which there are no commercial enterprises except that one makeshift auto repair center; that the detective observed passenger Wilson exit from the vehicle for a few minutes and return to the vehicle; that activity occurred at the approximate intersection of A Street and Somerset Street.

The detective again saw the defendant Wilson exit the vehicle at the intersection of Cambria Street and North Hope Street, and did observe the vehicle driven by defendant Schrader drive around the block; that Detective Carroll lost visual contact with defendant Wilson for a short period of time, but in following the vehicle operated by Schrader, observed defendant Wilson reunite and return to the vehicle operated by defendant Schrader; that the period of time which elapsed from the exit and return to the vehicle by Wilson was measured in terms of a few minutes; that during the time that Detective Carroll was in the vicinity of North Hope Street, he actively observed various unnamed persons engaging in transactions or seeking to engage in transactions for the sale of illegal drugs and paraphernalia;

that the detective did not see a transaction between an unnamed person and defendant Wilson.

(N.T. 8/24/93 at 33–36).

The vehicle left the area and was followed by Detective Carroll as it headed north on Interstate 95. Detective Carroll radioed to a uniformed police cruiser assigned to the BuxNet detail and requested the officer to stop the vehicle when it entered Bucks County. (N.T. 8/24/93 at 15–17). After the car was stopped, Detective Carroll arrived, identified himself and advised the occupants of the stopped vehicle of the BuxNet operation and his observations of them in the Badlands. Detective Carroll then asked the occupants to surrender any controlled substance or paraphernalia. Appellant surrendered a syringe, and stated that he had done a bag [of heroin] already. Defendant Schrader [2] turned over a packet of heroin and a bottle cap cooker. (N.T. 8/24/93 at 39–40). Appellant and co-defendant Schrader were then placed under arrest, and charged with possession of controlled substances and paraphernalia. Prior to trial, appellant filed a motion to suppress the evidence seized, which was denied following a suppression hearing.

Following a stipulated waiver trial, appellant was convicted of the aforementioned offenses. This timely appeal followed the entry of judgment of sentence.

Appellant raises the following issues for our review:

A. WHETHER THE TRIAL COURT ERRED IN DE-NYING APPELLANT'S SUPPRESSION MOTION WHERE A VEHICLE WAS STOPPED BECAUSE WHILE APPELLANT WAS IN A HIGH DRUG AC-TIVITY AREA, HE EXITED HIS COMPANION'S VE-HICLE AND LEFT THE OFFICER'S VIEW FOR BRIEF PERIODS OF TIME ON TWO OCCASIONS AND DID NOT OUTWARDLY OR OBVIOUSLY DIS-

**2.** Defendant Ricky Brent Schrader, who was represented by separate counsel, joined in the motion to suppress and was convicted of the same offenses, but did not file a notice of appeal from judgment of sentence.

PLAY A LEGITIMATE PURPOSE FOR BEING
THERE?

B. WHETHER BY CONCLUDING AND TAKING
INTO CONSIDERATION IN DENYING APPEL-
LANT'S SUPPRESSION MOTION THAT THE AP-
PELLANT DISPLAYED NO LEGITIMATE PURPOSE
FOR BEING IN A HIGH DRUG ACTIVITY AREA,
THE TRIAL COURT SHIFTED THE BURDEN OF
PROOF TO THE APPELLANT, THEREBY VIOLAT-
ING RULE 323(h) OF THE PENNSYLVANIA RULES
OF CRIMINAL PROCEDURE?

Appellant's Brief at 4.

 Our review of an order entered by the suppression
court is governed by the following standards. We must first
ascertain whether the record supports the factual findings of
the suppression court, and then determine the reasonableness
of the inferences and legal conclusions drawn therefrom.
*Commonwealth v. Burnside*, 425 Pa.Super. 425, 625 A.2d 678
(1993). In reviewing the denial of a motion to suppress
evidence, "we consider only the evidence of the prosecution's
witnesses and so much of the evidence for the defense as,
fairly read in the context of the record as a whole, remains
uncontradicted." *Commonwealth v. Reddix*, 355 Pa.Super.
514, 513 A.2d 1041 (1986). When the evidence supports the
suppression court's findings of fact on a motion to suppress,
this Court may reverse only when the legal conclusions drawn
from those facts are erroneous. *Commonwealth v. Quiles*, 422
Pa.Super. 153, 619 A.2d 291 (1993) (*en banc*). However, we
are bound by the trial court's findings of fact only to the
extent that they are supported by the record. *Commonwealth
v. Martinez*, 403 Pa.Super. 125, 588 A.2d 513 (1991).

 Appellant asserts that the police did not have a reason-
able suspicion of criminal activity in order to make a warrant-
less stop of the motor vehicle in which he was a passenger.
Specifically, appellant avers that the mere fact that he twice
alighted from a vehicle while it was located in an area of
known drug-related activity was insufficient to establish the

requisite reasonable suspicion in the minds of police that he was presently involved in criminal activity. Therefore, appellant concludes that the fruits of the ensuing unlawful stop by police should have been suppressed, as they were the result of an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution. We agree.

The Fourth Amendment, made applicable to the State by way of the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081] (1961), guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Time and again, this Court has observed that searches and seizures " 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' " *Thompson v. Louisiana*, 469 U.S. 17, 19–20 [105 S.Ct. 409, 410, 83 L.Ed.2d 246] (1984) (*per curiam*) (quoting *Katz v. United States*, 389 U.S. 347, 357 [88 S.Ct. 507, 514, 19 L.Ed.2d 576] (1967) (footnotes omitted)); *Mincey v. Arizona*, 437 U.S. 385, 390 [98 S.Ct. 2408, 2412, 57 L.Ed.2d 290] (1978); *see also United States v. Place*, 462 U.S. 696, 701 [103 S.Ct. 2637, 2641, 77 L.Ed.2d 110] (1983). One such exception was recognized in *Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), which held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot" the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. *Id.*, at 30 [88 S.Ct. at 1884–85]; *see also Adams v. Williams*, 407 U.S. 143, 145–146 [92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612] (1972).

*Commonwealth v. Johnson*, 429 Pa.Super. 158, 163–64, 631 A.2d 1335, 1338 (1993).

In reviewing whether reasonable suspicion (or probable cause) exists, we must, of course, examine the totality of the circumstances to determine whether there exists a particu-

larized and objective basis for suspecting an individual stopped of criminal activity.

*Commonwealth v. Epps*, 415 Pa.Super. 231, 233–34, 608 A.2d 1095, 1096 (1992) (citations omitted).

With these constitutional principles in mind, we turn to the findings and conclusions of the suppression court. The suppression court concluded that because appellant displayed no legitimate purpose for being in the neighborhood in question other than for the purchase of illegal drugs (N.T. 8/24/93 at 37), and because appellant did not show any other purpose for being present in a known high drug area, the police had "reasonable cause" or reasonable suspicion to stop the motor vehicle from which he twice exited while in the Badlands section of Philadelphia. (N.T. 8/24/94 at 36). We disagree.

■■ An investigatory stop under *Terry* cannot, without more, rest solely on a finding that a person did not possess a "legitimate purpose" for being present in a particular neighborhood. A suspect's mere presence in an area known for high drug-related activity is not sufficient to create a reasonable suspicion in the minds of police in order to justify a warrantless investigative stop under *Terry*. *See Commonwealth v. Kearney*, 411 Pa.Super. 274, 278, 601 A.2d 346, 348 (1992); *Commonwealth v. Martinez, supra; Commonwealth v. Espada*, 364 Pa.Super. 604, 609, 528 A.2d 968, 970 (1987); *Commonwealth v. Williams*, 287 Pa.Super. 19, 28 n. 9, 429 A.2d 698, 703 n. 9 (1981). Rather, in light of all the circumstances, a police officer's reasonable and articulable belief that criminal activity is afoot must be linked with his observation of suspicious or irregular behavior of the particular defendant stopped. *Commonwealth v. Espada, supra* at 609, 528 A.2d at 970. Stated conversely, a police officer's observation of irregular behavior without a concurrent belief that crime is afoot renders an investigatory stop unreasonable. *Id.*

Instantly, the facts as found by the suppression court disclose that the police observed appellant twice exit the monitored vehicle in a block known for high drug activity.

The record further reveals that in both instances police lost visual contact with appellant for several minutes.[3]

Although Detective Carroll observed numerous unnamed persons "hawking" drugs or engaging in drug transactions, it remains uncontroverted that he never observed appellant do anything more than exit the vehicle and return to it. The police did not have any prior information that appellant would be possessing contraband before they set up surveillance in the area that day. The police did not observe appellant approach anyone, speak to anyone, or engage in any behavior evidencing a transaction or exchange that would lead a police officer to reasonably suspect that an illegal drug sale was taking place.[4] Thus, the facts of record fail to establish a "particularized and objective basis" for suspecting that appellant was engaged in criminal activity.

Indeed, in *Commonwealth v. Greber*, 478 Pa. 63, 385 A.2d 1313 (1978), our Supreme Court affirmed a suppression ruling on more particularized facts favoring a *Terry* stop than in the instant case. In that case, undercover police officers were conducting surveillance of a bowling alley located in a high crime area. The police observed the defendants drive their vehicle into the parking lot of the bowling alley and hand a shopping bag to a juvenile who had been standing on the lot for some time, acting as though he was waiting for someone. Upon receiving the bag, the juvenile lifted it to his face and

3. In regard to the first instance that appellant exited the vehicle, the suppression court found as a fact "that the detective observed [appellant] exit from the vehicle for a few minutes and return to the vehicle." (N.T. 8/24/93 at 35). This finding suggests that the detective observed appellant while he was away from the vehicle. However, our review of the record shows that on cross-examination, the detective stated that he lost visual contact with appellant for several minutes. (N.T. 8/24/93 at 20).

4. We note that Detective Carroll testified that the area was a high drug area because he had made nine prior arrests that month, all of which were made as a result of *observed transactions*. (N.T. 8/24/93 at 17–18). Moreover, the record shows that the only suspicious behavior observed by the police was that of numerous unnamed persons "hawking" drugs. (N.T. 8/24/93 at 34). We are hard-pressed to accept any suggestion that the act of getting out of a car and back into it, without more, is irregular, suspicious or unusual behavior under *Terry*.

appeared to smell its contents. At this point, the police moved in and seized the bag and searched the vehicle, and found marijuana in both. The trial court suppressed the evidence on the basis that the police lacked probable cause to make a lawful arrest.

On appeal, the Commonwealth conceded that probable cause was absent, but argued that the police made a lawful investigative *Terry* stop. Our Supreme Court rejected this argument, and in a plurality opinion, reasoned as follows:

> The acts of appellees here—riding in a car, stopping at a bowling alley, exchanging a package—were all acts that were outwardly innocent. *Cf. United States v. Henry [Henry v. United States,]* 361 U.S. 98, 103–104, 80 S.Ct. 168 [171–172], 4 L.Ed.2d 134, 139–40 (1959). What occurred here was one isolated transaction, not a series of transactions which, under certain circumstances might indicate that an exchange of drugs was taking place. *See, Commonwealth v. Lawson, supra.* [454 Pa. 23, 309 A.2d 391 (1973) ] Officer Matuszak had no prior information that a drug transaction would occur on this evening. There was simply no reasonable basis to conclude that this particular package, a shopping bag large enough to contain a countless number of objects, happened to contain illegal drugs. While the officer's curiosity might have been aroused by the action that was witnessed, and while he might have had a hunch that illegal contraband was involved, that is not sufficient. *See Terry v. Ohio, supra; Commonwealth v. Jones, supra.* [474 Pa. 364, 378 A.2d 835 (1977) ]

*Commonwealth v. Greber, supra,* 478 Pa. at 68, 385 A.2d at 1316 (per Manderino, J.).[5]

■ Our thorough and searching review of the transcript does nothing more than place appellant on North Hope Street, an area of high drug activity, getting in and out of a car in the

5. Although a majority of the court was unable to agree on the rationale for its decision, its holding, which rejected a "reasonable suspicion" argument on facts certainly stronger than the instant case, lends further support to our conclusion that the evidence here was insufficient to justify a warrantless investigative stop under *Terry.*

afternoon. We, therefore, conclude that these facts, considered in light of all the surrounding circumstances, do not rise to the level necessary to conduct a warrantless investigative stop under *Terry*. *See Commonwealth v. Martinez, supra* (police officer's observation of defendant on street corner at an early hour, who walked away rapidly after observing police vehicle, and had an apparent bulge in her jacket insufficient to justify investigatory stop); *Commonwealth v. Espada, supra* (no reasonable suspicion existed for *Terry* stop of defendant who was on corner with others in high crime area, and walked toward police car when summoned).[6] Thus, we hold that the suppression court erred in refusing to suppress the drugs and paraphernalia seized by the police. Additionally, we hold that the court should have suppressed the inculpatory statement by appellant, as it, too, was the fruit of an illegal search and seizure.[7] *See Commonwealth v. Agnew*, 411 Pa.Super. 63, 600 A.2d 1265 (1991). As our Supreme Court stated in *Commonwealth v. Greber, supra*, "[w]hile the officer's curiosity might have been aroused by the action that *was* witnessed, and while

6. *Compare, In Interest of D.W.*, 427 Pa.Super. 629, 629 A.2d 1387 (1993) (radio report of drug sales and police observation of suspicious exchange in front of address reported warranted investigative stop); *Commonwealth v. Kearney, supra* (reasonable suspicion exists where police, responding to complaint of drug dealing in block observe defendant standing next to a companion, and on three different occasions, people give cash to companion in exchange for item in companion's pocket); *Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991) (combination of neighbor's reports of drug activity at address and suspicious heavy foot traffic during wee hours of morning in dark back alley of suspected crack house sufficient to justify stop of defendant who was sixth person within two and a half hours to knock on alleged crack house door); *Commonwealth v. Dennis*, 289 Pa.Super. 305, 433 A.2d 79 (1981) (unsolicited statements by defendant that "nothing is happening here", his erratic behavior of jumping up and down, neighbor's complaint of "suspicious" vehicle parked in middle of alley in high crime area, *inter alia*, justified investigatory stop). Significantly, in each of these cases, the police officer's direct observation of the suspect's actions provided the necessary link to their own beliefs that criminal activity was afoot. Here, no such evidence exists linking appellant to the criminal activity going on in and around North Hope Street on the day in question.

7. After surrendering a syringe to police during the stop, appellant told the officer "that he had done a bag [of heroin] already." (N.T. 8/24/93 at 40).

he may have had a hunch that illegal contraband was involved, that is not sufficient." *Commonwealth v. Greber, supra* at 68, 385 A.2d at 1316 (emphasis added). We recognize the good-faith interdiction efforts of the officers involved in the "Bux-Net" operation, and are constrained to condemn their efforts to prevent the spread of drug addiction into their community. However, as this Court has previously noted,

> [i]t may be, as a practical matter, that the absence of this evidence will prevent a conviction or even a retrial. Howev-er, "[o]ne of the prices we have to pay for the security which the Fourth Amendment bestows upon us is the risk that an occasional guilty party will escape." *Commonwealth v. Conn*, 377 Pa.Super. 442, 454, 547 A.2d 768, 774 (1988), quoting *Commonwealth v. Newman*, 429 Pa. 441, 448, 240 A.2d 795, 798 (1986).

*Commonwealth v. Agnew, supra* 411 Pa.Super. at 80, 600 A.2d at 1274.

Accordingly, we reverse the judgment of sentence entered by the trial court and remand for a new trial, at which the illegally seized evidence may not be used.

Judgment of sentence reversed.[8] Jurisdiction relinquished.

---

**8.** Due to our disposition of this matter on appellant's first issue, we need not address his second issue raised on appeal.