# Commonwealth v. J.A.K.

C.P. of Berks County, no. 571-J-2005.

*Douglas J. Waltman, Aaron J. Bell* and *Eric Winter,* for Commonwealth.
*Keith A. McConnell,* for defendant.

GRIM, *P.J.,* August 18, 2005—On July 5, 2005, the court granted the motion to suppress the physical evidence filed by the juvenile, J.A.K. The Commonwealth appeals the granting of the motion. This opinion is filed pursuant to Pa.R.A.P. 1925. The following are the pertinent facts.

The Reading Police Department in Berks County, Pennsylvania, received a seat belt enforcement grant. On May 13, 2005, the police department conducted seat belt surveys to determine compliance with seat belt usage at the locations where the photographic safety checkpoints were to be held. These surveys were taken between 9:30 a.m. and 11:45 a.m. The police department employs written guidelines for the checkpoints that were developed in conjunction with the National Highway Safety Administration.

The police department issued a media release announcing that it would be conducting traffic safety checkpoints within the City of Reading to coincide with a national and state effort to encourage seat belt usage. The release further stated that the officers would conduct a systematic checkpoint with a sequence number to be determined. It closes with the following statements:

"The commonsense fact remains that utilization of all restraints provided in vehicles can help to prevent injury and/or death, and in those extremely violent collisions can help to reduce the level of injury by preventing the driver or occupants from being thrown around inside the vehicle.

"The City of Reading Police Department wishes that all the citizens of Reading and Berks County, and visitors, have a safe and happy holiday season, and that we will be doing our part to encourage utilization of vehicle restraint systems and enforcing violations.

"We are asking for the cooperation of all to achieve the desired result of increased restraint system usage and a lessening of the incidence of injury and death through this effort." Commonwealth's exhibit number 12.

On May 25, 2005, the police department conducted a checkpoint in accordance with the provisions of the grant, and in conjunction with the "Click It or Ticket" state awareness program. According to the written guidelines, every third car or those with obvious violations, such as invalid inspections, would be checked. The safety checkpoint began at 11 p.m.

Officer Jose Gonzalez was one of the officers who worked at the checkpoint on May 25, 2005. He was not the officer who directed the vehicles. At 11:40 p.m. the juvenile was driving a vehicle that was diverted to the

checkpoint stop. Since Officer Gonzalez did not direct the vehicles he is uncertain if the juvenile's vehicle was a third vehicle in the sequence to pass the checkpoint. Three passengers were also in the car. The owner of the vehicle was not present.

Officer Gonzalez does not remember if the juvenile used a seat belt. He did not cite the juvenile for not wearing a seat belt. He did not observe the juvenile make any moving violations.

Officer Gonzalez approached the rear passenger's side of the car with a flashlight. He looked inside the vehicle and observed a clear plastic bag of suspected marijuana on the floor of the vehicle on the right side of the rear passenger seat. He immediately removed the passengers and the juvenile. Officer Gonzalez then observed a clear bag of suspected marijuana between the juvenile's legs as he was exiting the vehicle. He arrested the juvenile and placed him in handcuffs. He subsequently found 46 bags of suspected crack and two additional bags of suspected marijuana in the juvenile's right pocket. A preliminary Valtox test showed positive reactions to the suspected illegal substances.

Sergeant Michael Kalin went to the checkpoint to assist the uniformed officers with the car. Prior to getting into the vehicle, Sergeant Kalin looked under the front driver's seat to ensure his safety and found a Remington .32 caliber pistol loaded with the clip in, and one round in the chamber.

Criminal Investigator Joseph Walsh obtained a search warrant to search the vehicle. Nothing additional was found in the car.

The juvenile was charged with the acts of possession of a controlled substance [35 P.S. §780-113(a)(16)], pos-

session with the intent to deliver a controlled substance [35 P.S. §780-113(a)(30)], firearms not to be carried without a license [18 Pa.C.S. §6106(a)(1)], and possession of a firearm by a minor [18 Pa.C.S. §6110.1]. Neither he nor any of the passengers were charged with violating any of the provisions of the Motor Vehicle Code, including the provisions of the seat belt laws.

Based on the foregoing evidence, the court granted the juvenile's motion for the suppression of the physical evidence. The instant appeal followed. In its concise statement of matters complained of on appeal the Commonwealth contends that the court erred in granting the juvenile's motion because the record does not support a finding that the juvenile's arrest was unlawful.

In the case sub judice it is undisputed that the police department was supposed to have been conducting a seat belt safety awareness program. All of the Commonwealth's exhibits disclose that this was the purpose of the grant, the subject of the media release, and the ostensible purpose of the checkpoint. It is questionable that the real goal of the police department was to raise seat belt awareness, since the checkpoint began at 11 p.m. Clearly, if education of the public had been the true goal, it would have made more sense to have the checkpoint begin earlier in the day or evening when traffic would have been heavier. The prior surveys were all taken during the day. By beginning the checkpoint only at 11 p.m., the police department was more likely to find criminal activity afoot and less need for vehicular safety.

No witness testified as to the reason the juvenile was stopped at the checkpoint. It is uncontroverted that he had not engaged in any moving violations. It is uncer-

tain if the juvenile's vehicle was a third vehicle in the predetermined sequence. Apparently the juvenile wore a seat belt because he was not cited for his failure to do so. The front seat passenger also was not cited for failing to wear a seat belt. Hence, the Commonwealth did not establish that compliance with the seat belt checkpoint was the reason for the stop.

Assuming arguendo that compliance with seat belt usage had been the basis for the stop, the failure to comply with the mandatory seat belt law, in and of itself, was never intended to be a violation of the Motor Vehicle Code for which a motor vehicle could be stopped by a police officer. The police lack the authority to stop motor vehicles solely because their drivers and/or front seat passengers over the age of four are not using seat belts. *Commonwealth v. Henderson,* 444 Pa. Super. 170, 663 A.2d 728 (1995).

Prior to the stop, the police officers were without reasonable suspicion or probable cause to stop the vehicle. The facts and circumstances within the arresting officer's knowledge were insufficient to warrant a man of reasonable caution to believe that the juvenile had committed, or was committing, an offense. An officer's reasonable and articulable belief that criminal activity is afoot must be linked with his observation of suspicious or irregular behavior on the part of the particular defendant whom he stops. *Commonwealth v. Wilson,* 440 Pa. Super. 269, 655 A.2d 557 (1995), *appeal granted,* 543 Pa. 509, 673 A.2d 864 (1996).

Since there was no basis for the stop, the court had to grant the juvenile's motion to suppress the physical evidence. For the foregoing reasons, the court submits that its suppression order should be affirmed.