J-A06041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
      :         PENNSYLVANIA
      :
      v.       :
      :
      :
      :
RYAN MATTHEW WOLF       :
      :
      Appellant       :   No. 11 WDA 2021

Appeal from the Judgment of Sentence Entered November 10, 2020
In the Court of Common Pleas of Blair County Criminal Division at No:
CP-07-CR-0000972-2019

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:         **FILED: JULY 19, 2022**

Appellant, Ryan Matthew Wolf, appeals from the aggregate judgment of sentence of 88 to 244 months of confinement, which was imposed after his jury trial conviction for conspiracy, three counts of burglary of a building not adapted for overnight accommodation or occupied at the time of the burglary, three counts of theft by unlawful taking, three counts of receiving stolen property (RSP), one count of possession of an instrument of crime (PIC), and eight counts of criminal mischief.[1] We affirm.

The trial court made the following findings of facts in its suppression ruling:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 903(a)(1), 3502(a)(4), 3921(a), 3925(a), 907(a), and 3304(a)(5), respectively.

As a result of the rash of burglaries in the City of Altoona, Detective Derrick Tardive testified that Corporal Shope assigned certain officers to conduct surveillance on different bars. On October 21, 2018, Detective Derrick Tardive was working third shift, as a patrolman, and was assigned to look for suspicious conduct in the area of the Black and Gold Tavern. At approximately 6:00 a.m. on October 21, 2018, Detective Tardive was sitting in an unmarked car on 5th Avenue at the intersection of 5th Avenue and 30th Street approximately a block from the Black and Gold Tavern. The Black and Gold Tavern is located at 2927 6th Avenue and sits on 30th Street. On October 21, 2018 at approximately 6:00 a.m. Detective Tardive observed a black Kia Sorrento drive slowly past him on 5th Avenue. The vehicle then came around the block and remained at the stop sign at the intersection of 30th Street and 5th Avenue facing the location of the Black and Gold Tavern for a long period of time without a valid traffic reason as there was no other traffic going through the intersection. The black Kia Sorrento then proceeded further into the intersection towards the Black and Gold Tavern and stopped in the middle of the intersection facing the bar for an extended period of time. The vehicle then turned and suddenly drove away and the Detective testified it was his impression that the occupants of the Kia Sorrento may have spotted him in the unmarked vehicle. The detective testified that it was dark and there was no other traffic around at the time the Kia Sorrento was driving in the area of the Black and Gold Tavern. Detective Tardive testified that he initiated a traffic stop of the vehicle as a result of what he determined to be suspicious activity.

The Commonwealth stipulated at the hearing held on February 25, 2020 that there was no vehicle code violation and that there was a Terry stop for reasonable suspicion that criminal activity was afoot. The driver of the vehicle was identified as Taylor Wunder. Detective Tardive read Ms. Wunder her Miranda rights and then questioned Ms. Wunder on what she was doing and where she was going. He testified that Ms. Wunder stated they had come from a friend's house and the passengers were giving her directions and she was not sure where she was going. The front seat passenger was Jordan Ramsey and the back seat passenger was the instant [Appellant]. At the time of the investigatory stop, all three individuals were removed from the vehicle, questioned about the burglaries and all three denied knowledge of the burglaries. Detective Tardive observed in plain sight on the floor of the rear of the vehicle the following: a black pry bar; an electric drill with

- 2 -

a large drill bit, a pair of black gloves, bolt cutters and the long wooden handle of another tool sticking out from under a blanket. The male occupants of the vehicle were dressed in dark clothing. [Appellant] was wearing a baseball style hat and he had a winter face mask stuffed up underneath the cap. [Appellant] was wearing a lighter colored shirt under a dark hoodie. Detective Tardive terminated the stop and did not make any arrests.

Trial Court Opinion (TCO), 6/5/20, at 7-9.

Subsequent to the traffic stop, a search warrant was submitted regarding the driver of the vehicle, Taylor Wunder. After subsequent investigation, Appellant was charged by criminal complaint on November 21, 2018 with four counts of burglary of a building not adapted for overnight accommodation or occupied at the time of the burglary, nine counts of criminal conspiracy, four counts of theft unlawful taking, four counts of RSP, nine counts of criminal mischief, nine counts of possession of an instrument of crime, and five counts of attempted burglary.

Appellant filed a motion to suppress the traffic stop based on a lack of reasonable suspicion. The trial court denied Appellant's motion to suppress. Order, 6/5/20. Appellant proceeded to a jury trial on August 11, 2020 and on August 13, 2020 the jury found Appellant guilty of the charges indicated in the first paragraph of this memorandum. The trial court sentenced Appellant on November 10, 2020. Order, 11/10/20.

J-A06041-22

On December 28, 2020, Appellant filed this timely notice of appeal.[2]

Appellant presents the following issues for our review.

1. Whether the Suppression Court erred in not suppressing the observations of the police at the unlawful traffic stop of Taylor Wunder's vehicle and further at suppressing the search warrant of Taylor Wunder's vehicle and home based on the above unlawful traffic stop?

2. Whether the trial court erred in denying [Appellant's] request to suppress the testimony of Taylor Wunder because the written statement of Taylor Wunder made to police at the district attorney's office prior to trial was not provided to defense counsel prior to or at trial [and] only an audio tape of the statement was provided the day before the commencement of trial?

3. Whether the Sentencing Court abused its discretion in imposing sentence of 88 to 224 months incarceration when the sentence in Court disregarded [Appellant] was suffering from drug and alcohol issues at the time of his offenses, these were property crimes and the sentence was not consistent with protection of the public, the gravity of the offenses as it relates to impact on the life of the victims and community, and the rehabilitative needs of the [Appellant] so rendering the sentence excessive and unduly harsh?

Appellant's Brief, at 6-7 (suggested answers omitted).

Appellant argues that the Commonwealth did not establish reasonable suspicion of criminal activity warranting a stop of the vehicle because the

_____

[2] The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement within 21 days of the date of the order. Order, 12/24/20. Appellant timely filed his Rule 1925(b) statement along with a request to file an amended Rule 1925(b) statement. Rule 1925(b) statement, 1/14/21. The trial court granted Appellant's request to file an amended Rule 1925(b) statement, due February 12, 2021. Order, 2/3/21. Appellant filed a timely amended Rule 1925(b) statement on February 12, 2021. It appears that Appellant intended, and the trial court considered, his amended Rule 1925(b) statement to be supplemental to his original statement. *See* TCO at 3-5.

- 4 -

vehicle stop was a hunch by the Detective to go on a fishing expedition, questioning the occupants and looking inside the vehicle. Appellant's Brief, at 17.

> The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the rulings of a suppression court, this Court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

> Initially, we note
>
> [t]he Fourth Amendment, made applicable to the State by way of the Fourteenth Amendment . . . guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Time and again, this Court has observed that searches and seizures "'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" . . . One such exception was recognized in *Terry v. Ohio*, 392 U.S. 1 (1968), which held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot" the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions.

*Commonwealth v. Wilson*, 655 A.2d 557, 560 (Pa. Super. 1995) (citations and brackets omitted). "The determination of whether an officer had

reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011).

> [I]n light of all the circumstances, a police officer's reasonable and articulable belief that criminal activity is afoot must be linked with his observation of suspicious or irregular behavior of the particular defendant stopped.

*Wilson*, 655 A.2d at 561.

> [T]o demonstrate reasonable suspicion, an officer "must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." . . . Thus, in order to establish reasonable suspicion, an officer must articulate specific facts *in addition to inferences based on those facts,* to support his belief that criminal activity was afoot.

*Holmes*, 14 A.3d at 96–97 (citation omitted). "Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (citation omitted).

> *Terry* requires reasonable suspicion, and its purpose is to allow immediate investigation through temporarily maintaining the *status quo.* If reasonable suspicion exists, but a stop cannot further the purpose behind allowing the stop, the "investigative" goal as it were, it cannot be a valid stop.

*Commonwealth v. Chase*, 960 A.2d 108, 114–15 (Pa. 2008).

The trial court's findings of facts are supported by the record. Detective Tardive testified that he was in an unmarked car parked on 5th Avenue at the intersection of 5th Avenue and 30th Street, approximately a half block from the Black and Gold Tavern, which was closed at the time. N.T., 2/25/20, at 22. At approximately 6:00 a.m. he observed the vehicle in which Appellant was a passenger pass his car and then "come back around the block." *Id*., at 23, 24, 27. He clarified that the car "had already driven past the bar . . . past me through that intersection, came around the block and then I had recognized it from already seeing it." *Id*., at 32-33. Detective Tardive stated the car then stopped "for a long period of time at a stop sign," at the intersection of 5th Avenue and 30th Street, facing north on 30th Street, "which had a direct line of sight to see the bar," and agreed that the car had a clear vantage point to the entrances and exits of the Black and Gold Tavern. *Id*., at 23, 32.

Detective Tardive then observed the vehicle as it "crept further into the intersection towards the bar, so facing the bar and stopped and sat in the middle of the intersection for, again, an extended period of time." *Id*., at 23. He did not recall exactly how long the car was stopped in the middle of the intersection, but stated it was "a long, very long period of time." *Id*., at 24. He testified that there were "no other vehicles out at this point," *id*., at 24, and it was "very dark" outside. *Id*., at 23. Detective Tardive stated that he saw no reason for the vehicle to stop, there were "no other vehicles out at this point," and "there's no reason to stop for pedestrians walking through" because he did not observe any pedestrian traffic. *Id*., at 24, 29-30.

Additionally, he stated that the area contains "mostly residences." *Id*. He testified that "if there were multiple vehicles around [the vehicle's behavior] would have been an issue." *Id*., at 32. After stopping in the intersection, he stated that "they suddenly took a turn and went past me." *Id*., at 23.

Detective Tardive testified that he made the traffic stop in order to "identify the people and make sure that they weren't doing anything illegal," based on the "suspicious activity" that he described above. *Id*., at 24, 30. He stated that he was concerned about the bar. *Id*., at 33. He identified Appellant as a passenger in the backseat of the car. *Id*., at 26. Detective Tardive testified that he observed "multiple [] tools such as pry bars, a drill with a large drill bit on it, gloves and some other things that were covered up by a blanket. It appeared to be a long wooden object from what I recall." *Id*., at 26. He stated that he read the driver, Taylor Wunder, her *Miranda* rights and asked her "what she was doing and where she was going," and she stated that "other passengers were giving her directions and she was not sure where she was going." *Id*., at 24-25. He testified that he "had [Appellant] step out" of the vehicle. *Id*., at 34. Detective Tardive stated that did not arrest any of the occupants and he reported his findings back to Corporal Swope and then later to Sargeant Worley. *Id*., at 27.

The trial court concluded that

> [b]ased on the totality of the circumstances including his training, experience, observations and reasonable inferences therefrom, Detective Tardive had a reasonable suspicion that criminal activity was afoot when he stopped the vehicle in which Defendant was a passenger. The vehicle stop, conducted by Detective Tardive, was

legally appropriate and the information obtained as a result of the investigative stop may be used in the trial of [Appellant].

TCO, 6/5/20, at 11.

It is well settled that to justify their decision to stop and briefly detain appellant, the police need not establish their suspicions to a level of certainty, a preponderance, or even a fair probability. The suspect's expectation of privacy is not sufficiently infringed by the minimal intrusion attendant to an investigatory stop as to require any more than a reasonable suspicion that criminal activity was afoot. Though not tantamount to a "hunch," the requisite quantum of suspicion necessary to conduct an investigatory stop is a level "obviously less demanding than for probable cause."

*Commonwealth v. Fink*, 700 A.2d 447, 449 (Pa. Super. 1997) (citation omitted).

[T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer."

*Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (citation omitted).

We find that the trial court's legal conclusion is correct. Detective Tardive had reasonable suspicion to stop the vehicle in question. He pointed to specific, articulable facts as to why he did so. In addition to the facts he articulated, Detective Tardive was aware that there were eight other burglaries of bars in the area and he was assigned to a special detail based on the rash of burglaries of bars in the area. The facts, in light of his five years' experience as a patrolman, led him to draw the reasonable inference that

criminal activity was afoot in the vehicle in question. *See Commonwealth v. Green*, No. 172 MDA 2019, 2020 WL 241534, at *3 (Pa. Super. filed Jan. 15, 2020) (unpublished memorandum)[3] (under the totality of circumstances, officer's knowledge and experience concerning the reputation of the trail parking lot after hours and his observation of the two vehicles parked side-by-side in the unlit lot after hours without any obvious signs of park recreational equipment, establish that officer had specific and articulable reasonable facts that led him to suspect that criminal activity was afoot); *see also Commonwealth v. Brame*, 239 A.3d 1119, 1132 (Pa. Super. 2020) (officer articulated reasonable suspicion to stop appellant where he articulated the following: from ten to fifteen feet away he viewed appellant's car parked in the parking lot of an apartment building, a distance from the entrance, observed a second vehicle pull into the parking space directly next to appellant's vehicle, observed appellant throw a knotted plastic bag out of his passenger side window into the other vehicle through the driver's side window and then observed the female driver throw loosely balled-up United States currency into appellant's vehicle and then immediately drove out of the parking lot); *c.f. Commonwealth v. Rohrbach*, 267 A.3d 525, 528-29 (Pa. Super. 2021) (officer did not have reasonable suspicion to stop appellant's car

_____

[3] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

parked in parking lot based on general complaint by gym owner that the lot was used for drug use where officer did not articulate anything specific about appellant's vehicle); *Commonwealth v. Ayala*, 791 A.2d 1202, 1211 (Pa. Super. 2002) (officer lacked reasonable suspicion to stop appellant where he did not articulate any individualized or particularized suspicion that appellant was involved in criminal activity).

We further note that the testimony shows that Detective Tardive asked the occupants to exit the vehicle and ultimately released them without arrest. We find that he acted within the scope of an investigatory detention. *Commonwealth v. Malloy*, 257 A.3d 142, 150 (Pa. Super. 2021) ("Out of concern for officer safety, Pennsylvania search and seizure jurisprudence also permits certain limited intrusions upon the liberty of passengers in lawfully detained vehicles. Hence, officers may order passengers to remain in a car for the duration of a lawful stop. . . . [And] police officers may compel passengers to exit a lawfully stopped vehicle."). Here, the stop was based on reasonable suspicion, and Appellant's argument that Detective Tardive's observations of both Appellant's presence and the burglary tools in the rear of the vehicle must be suppressed as fruit of the poisonous tree fails.

Next, Appellant argues that the trial court erred in denying Appellant's request to preclude his co-defendant's testimony implicating Appellant in additional burglaries based on discovery violations. Appellant's co-defendant, Taylor Wunder, gave an initial statement to the police in 2018 implicating Appellant in five burglaries. Prior to trial, Ms. Wunder made an additional

- 11 -

statement to police at the district attorney's office implicating Appellant in 8 burglaries. According to Appellant, the audio tape of the additional statement was provided to Appellant's counsel the day before the commencement of trial. Appellant's Brief, at 20. First, Appellant first argues that the failure of the Commonwealth to provide a written copy of Taylor Wunder's statement was a violation of Pa.R.Crim.P. 573. *Id*., at 21.

Pa.R.Crim.P. 573 states, in pertinent part,

(2) Discretionary With the Court.

(a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

. . .

(iii) all written and recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not

Pa.R.Crim.P. 573 (2)(a)(iii). Appellant did not raise this discovery violation with the trial court. Therefore, it is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Appellant next argues that the trial court erred in denying his motion to preclude Taylor Wunder's statement due to its belated disclosure. "[W]here

disclosure is discretionary with the court, error will not be found where an appellant does not assert specific examples of possible prejudice before the lower court." ***Commonwealth v. Rineer***, 456 A.2d 591, 593 (Pa. Super. 1983) (citation omitted).

In its Rule 1925(a) opinion, the trial court stated,

> prior to the commencement of the jury trial on August 11, 2020, defense counsel raised what appears to be a late discovery allegation about an audio recording of a proffer from Taylor Wunder. The defense asserts that the audio tape proffer of Taylor Wunder included Ms. Wunder implicating the Defendant in more crimes than what was initially presented in her previous statements and discovery. The Commonwealth asserts that they had provided the details of Taylor Wunder's testimony to the defense in prior conversations. As a result of the late receipt of the audio tape, defense counsel requested that the Court exclude the testimony of Taylor Wunder.

> This Court engaged in a back and forth with defense counsel on the record. Defense counsel acknowledged that they did in fact have the audio tape in their possession on the morning of trial and had an opportunity to listen to the recording. When defense counsel indicated that they were prejudiced due to the late receipt of the audio tape, this Court inquired as to the nature of the prejudice. The defense acknowledged that their strategy would not change as a result of the audio recording. The defense initially indicated that the prejudice existed because they would no longer have the benefit of accepting a plea agreement that had expired. This Court questioned defense counsel as to whether or not [Appellant] would now be willing to accept the plea offer that was made prior to jury selection and the defense confirmed that the defendant would not be willing to do so.

> In light of the above, this Court indicated that we didn't see any prejudice to [Appellant] as a result of the late receipt of the audio tape. [Appellant] was aware that Taylor Wunder was going to be a Commonwealth witness. The Court also sought and received assurance from the Commonwealth that they would not call Taylor Wunder as [a] witness on the first day of trial so as to give the defense counsel additional time to prepare for the cross-

- 13 -

examination of Taylor Wunder. This Court felt that the defense receiving the audio tape prior to trial and having the additional evening was sufficient to allow the defense counsel to have more time to prepare for cross-examination, especially in light of the fact that it was not a surprise that the witness was going to be testifying against the Defendant. This court believes that we handled the matter appropriately and we stand by our decision.

TCO, 2/17/21, at 7-8.

Upon review of the record, we find that Appellant's argument lacks merit because he failed to demonstrate that he was prejudiced by the late receipt of the statement. *Rineer*, 456 A.2d at 593. Upon questioning by the trial court, Counsel stated that his defense of Appellant would not change. N.T., 8/11/20, at 4. He also agreed with the trial court that delaying Ms. Wunder's testimony by a day would assist him in preparing for her cross-examination. *Id*., at 3-4. Lastly, Counsel stated that his client would not accept the plea at trial. *Id*., at 3-8. The trial court did not err in denying Appellant's request to preclude the testimony of Ms. Wunder.

Lastly, Appellant argues that the sentencing court abused its discretion in imposing a harsh and excessive sentence. Appellant's issue is a challenge to the discretionary aspects of his sentences and is therefore not appealable as of right. *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018); *Commonwealth v. Bynum-Hamilton*, 135 A.3d 179, 184 (Pa. Super. 2016).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether

the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted). Appellant filed a timely notice of appeal and properly preserved this issue in a post-sentence motion and included a Pa.R.A.P. 2119(f) statement in his brief. Appellant's Brief, at 25. Next, we turn to whether Appellant's Rule 2119(f) statement raised a substantial question that the sentence is not appropriate under the Sentencing Code.

> Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis.
>
> . . .
>
> We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." . . . "[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists."

***Commonwealth v. Radecki***, 180 A.3d 441, 467–68 (Pa. Super. 2018) (citations omitted) (brackets in original).

> Appellant asserts in his Pa.R.A.P. 2119(f) statement,
>
> the imposition of the eighty-eight (88) to two hundred twenty-four (224) month sentence which involved consecutive sentences

on each offense, each at the top of the standard range, was excessive and unduly harsh considering [Appellant] committed these property crimes where no one was hurt or threatened, only to get money to buy drugs and satisfy his addiction. *Commonwealth v. Dodge*, 22 A.3d 1263 (Pa. Super. 2013). The aggregate sentence misapprehended the nature and circumstances of the offenses of which [Appellant] was convicted in contravention of 42 Pa.C.S. Section 9781(d)(1) so the sentence was not commensurate with the offenses, rendering it unreasonable and contrary to the fundamental norms of the Sentencing Code.

Appellant's Brief, at 25. In his Statement of Questions, presented to this Court, Appellant argues that the trial court disregarded the facts that he was suffering from drug and alcohol issues at the time of his offenses, no one was injured, these were property crimes and the sentence was, therefore, inconsistent with protection of the public, the gravity of the offenses as it relates to impact on the life of the victims and community, and the rehabilitative needs of the Defendant, so rendering the sentence excessive and unduly harsh. Appellant's Brief, at 7. *See Radecki*, 180 A.3d at 468 (this Court should not look beyond 2119(f) statement and statement of question presented to determine if substantial question presented).

Here, Appellant raises an excessive sentence claim based, not solely on the consecutive nature of the charges, but because the trial court disregarded his rehabilitative needs and that the sentence was disproportionate to the crimes. A claim that a sentence within statutory limits is excessive is generally not sufficient to raise a substantial question, absent a claim that the sentence violates a specific provision of the Sentencing Code or that the sentencing court did not consider the sentencing guidelines or factors concerning the

crimes and the defendant that a sentencing court is to consider under the Sentencing Code. *Commonwealth v. Zeigler*, 112 A.3d 656, 662 (Pa. Super. 2015); *Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa. Super. 2012); *Commonwealth v. Titus*, 816 A.2d 251, 255–56 (Pa. Super. 2003). We find that Appellant has raised a substantial question for our review. *See Zeigler*, 112 A.3d at 662; *Fisher*, 47 A.3d at 159; *Titus*, 816 A.2d at 255–56. We turn to the merits of Appellant's discretionary sentence issue.

We are guided by the following. "The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds . . . the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781 (c)(2). "In all other cases, the appellate court shall affirm the sentence imposed by the sentencing court." *Id*. We note,

> [w]here the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

*Radecki*, 180 A.3d at 471 (citation omitted).

The sentences are within the statutory limits. *See* 18 Pa.C.S. § 1104 (sentence of imprisonment for misdemeanor); 18 Pa.C.S. § 1103 (sentence of imprisonment for felony). The guidelines are as follows: for conspiracy to

- 17 -

commit burglary, graded as a second degree felony, the standard range is 12-18 months' incarceration, the mitigated range is 9 months, and the aggravated range is 21 months; for PIC, graded as a first degree misdemeanor, the standard range is 6 to 16 months' incarceration, the mitigated range is 3 months, and the aggravated range is 19 months; for burglary, graded as a second degree felony, the standard range is 12 to 18 months' incarceration, the mitigated range is 9 months, and the aggravated range is 21 months.  *See* Guideline Sentence Forms; N.T. Sentencing, 11/10/20, at 6-7, 14.  The trial court sentenced Appellant to 18-48 months' incarceration for conspiracy, 18-48 months' incarceration each on the three counts of burglary, and 16-32 months' incarceration for PIC.  Each of these sentences was at the high end of the standard range under the guidelines. *See* Guideline Sentence Forms.  The trial court ordered the sentences to run consecutively.  The trial court imposed fines, costs and restitution at two counts of criminal mischief graded as third degree felonies, one count of criminal mischief graded as a second degree misdemeanor, and five summary criminal mischief charges.

At Appellant's sentencing hearing, the trial court heard testimony from a witness representing the small business owners who were burgled, N.T. Sentencing, 11/10/20, at 7-8, from Appellant's Aunt, *id*., at 14-16, and from Appellant. *Id*., at 16-17.  The trial court received the PSI.  *Id*., at 1-3.

The trial court stated,

[T]he Court had the opportunity to preside over the trial of this case and we have – so as a result of that we are aware of the specific crimes that are at issue here and the impact that those crimes have had on the Altoona community and specifically the victims in the case. We also note that the presentence investigation was reviewed by the Court and carefully considered in all of its aspects, factors in that presentence investigation that weigh in favor of the defendant but also facts that weigh against the defendant. Specifically, the presentence investigation does include some victim information and victim comments as part of the presentence investigation, which the Court has considered. We do think that crimes of this nature tend to impact victims substantially and the court believes that that's an important factor for consideration in sentencing. We also note that the nature of these particular crimes in the fairly brief period of time that they occurred within the city of Altoona also placed the business owners with a lot of anxiety and the community in general anxiety because of the nature of the crimes and there [sic] effect on the business community. So we think that these are important considerations for the Court to take into account.

We also acknowledge, however, that [Appellant] does have minor children. It's important to take into consideration [Appellant's] family into any sentencing proceeding and we also note that while [Appellant] does have a lengthy criminal history, it appears that a review of the presentence investigation does not indicate that he had served any lengthy periods of time in state prison prior to these offenses. That's not to say that he didn't spend time in state prison because he did for it looks like drug offenses but none of the magnitude that a sentence like this would cause. So the Court believes that we have considered all of the facts in the case and we believe that the sentence that we are going to implement in this case is fair and reasonable but also takes into account the impact that we believe that the crime has had on the community and on these victims.

*Id*., at 18-19.

We do not find that Appellant's case involves circumstances "where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). The trial court adequately considered the rehabilitative needs of

Appellant, as it "carefully considered" the PSI. N.T. Sentencing, 11/10/20, at 18. Additionally, we find the sentence is consistent with the protection of the public and the gravity of the offenses as it relates to impact on the life of the victims and community. Appellant was sentenced within the standard range of the sentencing guidelines to each charge for which he received a sentence. The trial court did not abuse its discretion in running some of the sentences consecutively where, as here, the resulting total aggregate sentence is not extremely lengthy for the criminal conduct at issue, the crimes for which consecutive sentences were imposed arose out of separate conduct, and there is no basis for a claim that the sentencing court failed to consider mitigating factors. *Radecki*, 180 A.3d at 470-71; *Commonwealth v. Zirkle*, 107 A.3d 127, 133-34 (Pa. Super. 2014). The choice between consecutive and concurrent sentences is solely within the discretion of the trial court. *See*, *Commonwealth v. Boyer*, 856 A.2d 149, 153-54 (Pa. Super. 2004). We therefore conclude that the trial court acted within its discretion in imposing consecutive sentences after reviewing the record, including any mitigating factors, and the PSI.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/19/2022